```
 1                   UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION


 3
     United States of America,-     Docket No. 3:15-cr-024-3
 4                               -
          Plaintiff,             -   Toledo, Ohio
 5                               -   June 27 2016
              v.                 -   Sentencing
 6                               -
     Ana Angelica Pedro Juan, -
 7                               -
          Defendant.             -
 8   -------------------------------

 9             TRANSCRIPT OF SENTENCING HEARING
              BEFORE THE HONORABLE JAMES G. CARR
10                UNITED STATES DISTRICT JUDGE.

11   APPEARANCES:

12   For the Plaintiffs:   United States Attorneys' Office
                           By: Chelsea S. Rice
13                         Suite 400
                           801 Superior Avenue, W
14                         Cleveland, OH 44113
                           (216) 622-3752
15
                           U.S. Department of Justice
16                         By:  Dana Mulhauser
                           PHB 5130
17                         950 Pennsylvania Avenue
                           Washington, DC 20530
18                         (202) 305-0007

19   For the Defendant:    Merle R. Dech, Jr.
                           2nd Floor, 610 Adams Street
20                         Toledo, OH 43604
                           (419) 241-5506
21
     Court Reporter:       Tracy L. McGurk, RMR, CRR
22                         1716 Spielbusch Avenue
                           Toledo, Ohio 43604
23                         (419) 213-5520

24   Interpreter:          Ellen Donohue

25   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
```

|  |  |  |
|---|---|---|
|  | 1 | (Commenced at 9:01 a.m.) |
|  | 2 | (The interpreter was sworn by the clerk.) |
|  | 3 | THE CLERK:  3:15-CR-24-3, United States of |
| 00:06:23 | 4 | America versus Ana Angelica Pedro Juan.  Matter called |
| 00:06:28 | 5 | for sentencing. |
| 00:06:29 | 6 | THE COURT:  Let the record show the |
| 00:06:30 | 7 | Defendant is present in court with her attorney, Mr. |
| 00:06:33 | 8 | Merle Dech.  The Government is represented by AUSA |
| 00:06:37 | 9 | Chelsea Rice.  Is that correct? |
| 00:06:40 | 10 | MS. RICE:  Chelsea Rice, Your Honor, yes. |
| 00:06:48 | 11 | THE COURT:  The Pretrial Services Officer, |
| 00:06:53 | 12 | Myrna Greenwood, is present.  Ellen Donahue, |
| 00:06:56 | 13 | interpreter, is also present. |
| 00:06:57 | 14 | With you are. |
| 00:06:58 | 15 | MS. RICE:  Your Honor, I am joined by trial |
| 00:07:00 | 16 | attorney Dana Mulhauser from the Department of Justice, |
| 00:07:04 | 17 | and Special Agent Matthew Komar of the FBI. |
| 00:07:11 | 18 | THE COURT:  I assume he's the case agent? |
| 00:07:14 | 19 | MS. MULHAUSER:  Yes, Your Honor. |
| 00:07:16 | 20 | THE COURT:  Counsel, have you each received |
| 00:07:18 | 21 | and reviewed the Presentence Report?  Any objections |
| 00:07:22 | 22 | I'll go over in a minute.  Aside from those objections, |
| 00:07:25 | 23 | are there any other objections? |
| 00:07:27 | 24 | MR. DECH:  No, Judge, on behalf of my |
| 00:07:29 | 25 | client. |

| | | |
|---|---|---|
| 00:07:29 | 1 | MS. RICE:  Not on behalf of the United |
| 00:07:31 | 2 | States. |
| 00:07:31 | 3 | THE COURT:  Counsel, have you each received |
| 00:07:33 | 4 | and reviewed the Presentence Report?  And, Mr. Dech, |
| 00:07:36 | 5 | have you reviewed it with your client? |
| 00:07:38 | 6 | MR. DECH:  Yes, I did in Spanish with the |
| 00:07:40 | 7 | interpreter, Ms. Cindy Lepley a few weeks ago at the |
| 00:07:44 | 8 | Lucas County Correction Center. |
| 00:07:46 | 9 | THE COURT:  Let me ask the defendant -- |
| 00:07:47 | 10 | first let me say, Ms. Donohue, obviously if I'm going |
| 00:07:53 | 11 | too quickly, say so. |
| 00:07:55 | 12 | THE INTERPRETER:  Yes, Your Honor. |
| 00:07:56 | 13 | THE COURT:  And if you'll please tell the |
| 00:07:58 | 14 | defendant if she has any questions or you have any |
| 00:08:02 | 15 | concerns, she's not able to follow along, let me know. |
| 00:08:09 | 16 | Also please tell her that if at any time she doesn't |
| 00:08:14 | 17 | understand what's happening to let you know so that she |
| 00:08:18 | 18 | can talk to her attorney. |
| 00:08:23 | 19 | THE INTERPRETER:  Okay. |
| 00:08:24 | 20 | THE COURT:  And ask her if her lawyer |
| 00:08:26 | 21 | reviewed the Presentence Report with her. |
| 00:08:34 | 22 | THE DEFENDANT:  Yes. |
| 00:08:34 | 23 | THE COURT:  Mr. Dech, if you could show her |
| 00:08:38 | 24 | a copy and ask her if that is the copy you reviewed with |
| 00:08:42 | 25 | her. |

| | | |
|---|---|---|
| 00:08:52 | 1 | If you'll ask the defendant if she's |
| 00:08:54 | 2 | confident that her attorney has done everything |
| 00:08:57 | 3 | necessary to prepare her and himself for today's |
| 00:09:03 | 4 | proceeding? |
| 00:09:06 | 5 | THE DEFENDANT: Yes. |
| 00:09:10 | 6 | THE COURT: Give me a moment to get my |
| 00:09:12 | 7 | computer going. |
| 00:09:25 | 8 | Let's turn first to the objections. |
| 00:09:27 | 9 | Actually, let me just confirm that the present guideline |
| 00:09:32 | 10 | calculation as prepared by Ms. Greenwood -- give me a |
| 00:09:43 | 11 | moment to get the computer opened up. |
| 00:10:35 | 12 | I apologize. I'm having some trouble |
| 00:10:39 | 13 | finding what I need. |
| 00:10:49 | 14 | (Discussion had off the record.) |
| 00:12:12 | 15 | THE COURT: I'm sorry, I can't get into my |
| 00:12:15 | 16 | computer with all my notes. I'm not happy. I |
| 00:12:23 | 17 | apologize, but I can't function without material that I |
| 00:12:29 | 18 | thought would be accessible by my computer. I know I |
| 00:12:45 | 19 | had you all come here early so we could get underway. I |
| 00:12:49 | 20 | apologize. I'm very upset by this. It will not affect |
| 00:12:54 | 21 | what happens next; it's just very frustrating. |
| 00:12:58 | 22 | Mr. Dech, even though I don't have my notes, |
| 00:13:01 | 23 | let's start talking about your objections. And before I |
| 00:13:05 | 24 | do that, Ms. Greenwood, will somebody recite for the |
| 00:13:08 | 25 | record the Guideline Calculations as presently |

| | | |
|---|---|---|
| 00:13:11 | 1 | calculated. |
| 00:13:17 | 2 | MS. GREENWOOD:  The Presentence Report, |
| 00:13:18 | 3 | there's a base offense level of 22.  Specific offense |
| 00:13:23 | 4 | characteristics -- do you want the guideline cited? |
| 00:13:28 | 5 | THE COURT:  What's the total base offense |
| 00:13:30 | 6 | level as you've presently calculated it? |
| 00:13:33 | 7 | MS. GREENWOOD:  The total offense level as |
| 00:13:35 | 8 | presently calculated is a 34. |
| 00:13:38 | 9 | THE COURT:  Criminal History Category of I, |
| 00:13:43 | 10 | so what's the Guideline Range? |
| 00:13:45 | 11 | MS. GREENWOOD:  Criminal History Category I. |
| 00:13:54 | 12 | The guideline range of 151 to 188 months. |
| 00:14:00 | 13 | THE COURT:  And, counsel, does that conform |
| 00:14:02 | 14 | to your understanding of the present calculation of the |
| 00:14:07 | 15 | guideline range? |
| 00:14:08 | 16 | MS. RICE:  Your Honor, that is what is in |
| 00:14:14 | 17 | the Pretrial Services Report; however, there was a plea |
| 00:14:17 | 18 | agreement between the parties which the United States is |
| 00:14:20 | 19 | bound within the guideline range of the plea agreement, |
| 00:14:22 | 20 | and that guideline range is 63 to 78 months. |
| 00:14:27 | 21 | THE COURT:  And that's not binding on me? |
| 00:14:30 | 22 | MS. RICE:  Correct, Your Honor. |
| 00:14:31 | 23 | THE COURT:  Mr. Dech, would you agree with |
| 00:14:32 | 24 | both that statement as well the Guideline Range as |
| 00:14:38 | 25 | presently calculated? |

| | | |
|---|---|---|
| 00:14:39 | 1 | MR. DECH:  Yes, I would, Judge. |
| 00:14:40 | 2 | THE COURT:  Okay.  Let's turn to your |
| 00:14:42 | 3 | objections. |
| 00:14:44 | 4 | MS. GREENWOOD:  Your Honor, the guideline |
| 00:14:46 | 5 | range is limited to 120 months, ten years. |
| 00:14:50 | 6 | THE COURT:  That's the statutory maximum? |
| 00:14:53 | 7 | MR. DECH:  Judge, if I may, my objection |
| 00:14:55 | 8 | goes to the offenses.  Judge, my objections that I put |
| 00:15:07 | 9 | forth basically comport to the plea agreement between |
| 00:15:11 | 10 | the parties which is nonbinding on the Court.  And for |
| 00:15:14 | 11 | those reasons I filed those objections.  I would ask the |
| 00:15:18 | 12 | Court to follow the plea agreement, to go to a total |
| 00:15:22 | 13 | offense level before acceptance of a Level 29, and then |
| 00:15:25 | 14 | granting a three-level departure for acceptance, which |
| 00:15:29 | 15 | the Government would make the appropriate motion to do |
| 00:15:31 | 16 | so. |
| 00:15:36 | 17 | THE COURT:  Myrna, may I see your copy of |
| 00:15:40 | 18 | the plea agreement? |
| 00:15:42 | 19 | MS. RICE:  Your Honor, just to interrupt, |
| 00:15:44 | 20 | it's a 20-year statutory max, not a ten-year statutory |
| 00:15:47 | 21 | max. |
| 00:15:52 | 22 | THE COURT:  Basically do you have any |
| 00:15:54 | 23 | substantive objections at all? |
| 00:15:55 | 24 | MR. DECH:  Other than that, no, Your Honor. |
| 00:16:04 | 25 | THE COURT:  I'll be quite candid with you |

| | | |
|---|---|---|
| 00:16:06 | 1 | before I turn to the matter of allocution and |
| 00:16:09 | 2 | mitigation.  I think that the Plea Agreement |
| 00:16:12 | 3 | substantially understates the appropriate sentence in |
| 00:16:16 | 4 | this case.  As I understand the circumstances, and quite |
| 00:16:21 | 5 | candidly, I read both of the Presentence Reports and the |
| 00:16:29 | 6 | various memoranda, victim statements and so forth, I |
| 00:16:33 | 7 | believe, quite carefully and thoroughly.  That's why I'm |
| 00:16:37 | 8 | frustrated by not having my notes which summarize |
| 00:16:40 | 9 | various points that I consider to be salient about this |
| 00:16:44 | 10 | case and the need for more substantial and severe |
| 00:16:48 | 11 | punishment in my view.  I tell you both that so that you |
| 00:16:51 | 12 | can address that in your remarks to me.  I know that |
| 00:16:56 | 13 | both of you are bound to urge a sentence within that |
| 00:17:02 | 14 | outlined in the plea agreement. |
| 00:17:05 | 15 | So that you can speak directly to my |
| 00:17:08 | 16 | impressions, let me try to recite those that I can |
| 00:17:12 | 17 | recall: |
| 00:17:13 | 18 | Eight of the ten designated victims were |
| 00:17:18 | 19 | under age.  They were minors.  Some, according to my |
| 00:17:22 | 20 | understanding, as young as 14 when they came over here. |
| 00:17:27 | 21 | This defendant played a very active role, |
| 00:17:30 | 22 | particularly with the minor defendants, in accomplishing |
| 00:17:34 | 23 | their illegal entry into this country.  She held herself |
| 00:17:38 | 24 | out falsely to be an appropriate companion or custodian |
| 00:17:42 | 25 | for underage individuals which resulted in her being |

| | | |
|---|---|---|
| 00:17:50 | 1 | able successfully to get them into this country. |
| 00:17:54 | 2 | It's my understanding from the Presentence |
| 00:17:56 | 3 | Report that in the absence of the principal defendant, |
| 00:18:02 | 4 | Mr. Castillo-Serrano, she basically oversaw the |
| 00:18:07 | 5 | operation, which included conditions that I previously |
| 00:18:17 | 6 | referred to being reminiscent of Aleksandr Solzhenitsyn |
| 00:18:24 | 7 | from 30 or 40 years ago about conditions in the Russian |
| 00:18:30 | 8 | Gulag.  That is an overstatement, clearly; however, |
| 00:18:38 | 9 | confining individuals -- and that's the best and most |
| 00:18:41 | 10 | apt term, the way in which they were kept, they were |
| 00:18:45 | 11 | kept separate and apart in clusters upwards of 40 people |
| 00:18:52 | 12 | within the particular trailer, I think there were six |
| 00:18:55 | 13 | trailers.  She was fully cognizant of those conditions, |
| 00:19:02 | 14 | tolerated them, did nothing apparently to change them. |
| 00:19:07 | 15 | To back up, she was involved in enticing, |
| 00:19:10 | 16 | the correct word for what happened here, by false |
| 00:19:13 | 17 | pretenses and representations to the families of these |
| 00:19:19 | 18 | children.  She was involved in the recruitment of these |
| 00:19:35 | 19 | minors and children in Guatemala with promises of good |
| 00:19:39 | 20 | work and an education; neither of which, of course, |
| 00:19:43 | 21 | occurred. |
| 00:19:45 | 22 | The working conditions were appalling.  The |
| 00:19:48 | 23 | working hours were without any regard to what the law |
| 00:19:55 | 24 | permits and requires.  She may not have shared in the |
| 00:20:04 | 25 | so-called rent -- I assume she did not -- of upwards of |

00:20:10  1   $4,500 a month.  And correct me if I'm wrong about that.

00:20:14  2   That was deducted from the paychecks that these

00:20:19  3   individuals received.

00:20:22  4            She was involved, according to my

00:20:24  5   understanding, to some extent in the cashing of the

00:20:27  6   checks at a grocery store or whatever.  I don't know

00:20:32  7   the extent to which she may have kept the proceeds.  I'm

00:20:36  8   willing to assume it may have been modest, if at all.

00:20:39  9   It's quite clear to me that the other defendant was the

00:20:41  10  principal actor in this, but she certainly was a fully

00:20:45  11  engaged, fully committed, and fully active participant

00:20:51  12  in what fairly and accurately -- what euphemistically is

00:20:57  13  called forced labor.  I call it slavery because that's

00:21:00  14  what it was.  And to accept the plea agreement

00:21:05  15  recommendation I think would be a manifest injustice and

00:21:09  16  woefully understate the nature of the offense and this

00:21:12  17  Defendant's role in it.  She was a principal

00:21:17  18  participant.  She was actively involved.  She was not a

00:21:20  19  bystander.  From recruitment, to entry, to oversight she

00:21:27  20  was actively involved in circumstances that are simply

00:21:37  21  unimaginable.

00:21:41  22            I intend at some point to read substantial

00:21:45  23  portions of the offense into the record so they're

00:21:47  24  publicly known and available.  The summary that I've

00:21:50  25  just given does not do them justice.  They're not nearly

00:21:58  1   a sufficiently full and substantial enough depiction of

00:22:01  2   what this defendant and the others in this case were

00:22:04  3   involved in.

00:22:07  4            I want you to understand that clearly and

00:22:15  5   completely.  That's my mindset reading these materials

00:22:20  6   and thinking about this sentencing and the other one I

00:22:22  7   have this morning.  I know she has no prior criminal

00:22:26  8   record, but that, quite candidly, I think, is

00:22:33  9   immaterial.  I think that the need for public deterrence

00:22:42  10  is as substantial as it is in any case that I've had

00:22:45  11  with the exception of a couple.  I don't know whether

00:22:49  12  this goes on extensively or if this is a one-time deal.

00:22:55  13  If it goes on at all anywhere in this country, I want

00:23:00  14  those who are culpable to understand when they are

00:23:03  15  called to the bar of justice in a Federal Court, they

00:23:07  16  will be dealt with appropriately.  And I am not a

00:23:17  17  retributivist on the whole, but I think that theory has

00:23:20  18  some role to play in this case.  The overriding

00:23:29  19  sentencing purpose in my view that must be served in

00:23:32  20  this case is public deterrence.  I hope that the

00:23:37  21  government makes the sentences in these cases known

00:23:42  22  broadly and extensively to everybody and anybody who

00:23:48  23  might in any way be engaged in, know about, condone, or

00:23:56  24  tolerate the crimes that this woman and her confederates

00:24:05  25  and co-conspirators committed.

00:24:10  1          I know, Mr. Dech, I've given you a very

00:24:13  2   tough road to hoe, but I think you've been in front of

00:24:16  3   me often enough to know I try to express at the outset

00:24:20  4   of every sentencing how I view the case and what's on my

00:24:23  5   mind.

00:24:27  6          Let me hear first from the Government, then

00:24:30  7   I will hear from you and your client, Mr. Dech.  I

00:24:32  8   understand the government is bound by its commitment

00:24:35  9   under the Plea Agreement to urge me to remain within the

00:24:39  10  limits, and the Government's obviously free to invite my

00:24:46  11  comments to urge me to do so.

00:24:48  12         MS. RICE:  Thank you, Your Honor.  I'll

00:24:49  13  start where you left off, which is:  Yes, the United

00:24:53  14  States is bound by the Plea Agreement, which by the Plea

00:24:58  15  Agreement's calculations there is a guideline range of

00:25:01  16  63 to 78 months.  So we understand the Court has full

00:25:05  17  discretion to sentence as appropriate, and we simply ask

00:25:10  18  that a high end of the guideline sentence be imposed, at

00:25:16  19  least.

00:25:16  20         Your Honor, I'm going to touch upon why we

00:25:18  21  believe that is sufficient but not greater than

00:25:22  22  necessary, and I'd like to start with, I think, what

00:25:28  23  best encompasses this defendant is that she lied over

00:25:31  24  and over again to the benefit of herself, to the benefit

00:25:35  25  of her then-boyfriend Aroldo Castillo-Serrano, and to

00:25:41  1    the severe detriment of these juvenile victims.

00:25:44  2            Your Honor, as you pointed out, she lied to

00:25:47  3    the families, she lied to these minors, and she lied to

00:25:52  4    the Federal Government in order to obtain custody of

00:25:55  5    these minors.  She told them that they would be safe,

00:25:59  6    they would receive education, they would be looked

00:26:02  7    after, and they would be taken care of.  She swore

00:26:08  8    out --

00:26:09  9            THE COURT:  And earn a decent wage.

00:26:11 10            MS. RICE:  I'm sorry, Your Honor?

00:26:13 11            THE COURT:  And they would earn a decent

00:26:14 12    wage.

00:26:15 13            MS. RICE:  Correct, Your Honor.  And she

00:26:16 14    used aliases and false identities with the Office of

00:26:20 15    Refugee Resettlement in order to gain custody of these

00:26:24 16    juveniles.  She recruited other individuals to lie to

00:26:27 17    the Federal Government to obtain custody of these

00:26:30 18    juveniles, and then instead of taking them to school, to

00:26:33 19    medical facilities, to have a decent living, she brought

00:26:39 20    them to these trailers were they were forced to work

00:26:42 21    extremely long hours in poor conditions and not be paid.

00:26:48 22    Your Honor, she played the role of overseeing these

00:26:51 23    juveniles at the trailer park, taking control of their

00:26:56 24    paychecks, and then, as Your Honor pointed out, cashing

00:27:00 25    these paychecks and sending the money back to Aroldo

00:27:06  1   Castillo-Serrano in Guatemala.

00:27:09  2           THE COURT:  If I can interrupt, does the

00:27:11  3   Government have an estimate of how much the Defendants

00:27:16  4   collectively, and I would assume it's principally Mr.

00:27:21  5   Castillo-Serrano, wound up pocketing on a monthly basis

00:27:25  6   or weekly or between the rent and the -- et cetera?

00:27:31  7           MS. RICE:  Your Honor, because of the

00:27:32  8   different aliases and the different check cashing stores

00:27:37  9   that were used, we can't give you a concrete figure, but

00:27:40 10   the amount of about $4,500 a month in rent is correct.

00:27:45 11           THE COURT:  Quote, rent?

00:27:46 12           MS. RICE:  Correct.  Quote, rent.  We do

00:27:49 13   know that it was -- approximately $15,000 was the

00:27:53 14   smuggling fee for each of these juveniles.

00:27:57 15           THE COURT:  Apparently it varied from $6,000

00:28:00 16   that they could pay up front, which I imagine few could,

00:28:03 17   to $15,000.  And, of course, we'll get to the whole deed

00:28:06 18   issue with the next defendant.

00:28:08 19           MS. RICE:  Yes, Your Honor.  So no, we don't

00:28:10 20   have a specific figure, but we do know that these

00:28:13 21   juveniles did not receive the money that they were given

00:28:17 22   for their work at the egg farm.  And something that is

00:28:22 23   especially significant with this defendant is she not

00:28:25 24   only lied to obtain custody of the minors, lied to them,

00:28:29 25   to their families, but once she learned that the

00:28:32  1   government was aware of this human trafficking

00:28:36  2   conspiracy, she and her coconspirator, Aroldo

00:28:43  3   Castillo-Serrano, devised a scheme where they would tell

00:28:49  4   Aroldo Castillo-Serrano's son, who played a role at the

00:28:51  5   trailer park, to lie to the Federal Government.  And

00:28:53  6   then this defendant herself in a very lengthy interview

00:28:57  7   with the Federal Bureau of Investigation in which she

00:29:00  8   was there voluntarily, aware of the role of the Federal

00:29:06  9   Bureau of Investigation, denied a number of facets of

00:29:09  10  her involvement in this conspiracy.

00:29:11  11              THE COURT:  Denied --

00:29:12  12              MS. RICE:  -- a number of things regarding

00:29:14  13  her role in this conspiracy.

00:29:15  14              So, Your Honor, she not only lied to obtain

00:29:17  15  custody of the minors, lied to them, but she lied when

00:29:21  16  she was caught.

00:29:22  17              THE COURT:  And she also lied to the extent

00:29:25  18  she was involved in recruitment.

00:29:27  19              MS. RICE:  Correct, Your Honor.  So

00:29:31  20  certainly, Your Honor, we believe that a sentence at the

00:29:37  21  high end of our Guideline Range is appropriate, and we

00:29:40  22  defer to the Court regarding whether to follow the Plea

00:29:44  23  Agreement or not, given this defendant's role.

00:29:47  24              We also would ask, as with the other

00:29:49  25  defendants that were convicted of the human trafficking

| | | |
|---|---|---|
| 00:29:52 | 1 | offense, if she is found not to be indigent, which she |
| 00:29:57 | 2 | may be indigent, so this may not be applicable, that |
| 00:30:00 | 3 | there's a $5,000 additional special assessment.  If she |
| 00:30:04 | 4 | is indigent, that does not apply. |
| 00:30:07 | 5 | THE COURT:  I'm willing to assume that she |
| 00:30:08 | 6 | is.  I mean, she will be in prison; she'll have no |
| 00:30:14 | 7 | access to whatever proceeds she may herself have |
| 00:30:17 | 8 | generated.  I think as a practical matter the likelihood |
| 00:30:21 | 9 | that she will ever pay the restitution obligation is |
| 00:30:29 | 10 | very slight.  And, of course, she'll be remanded to the |
| 00:30:33 | 11 | custody of Immigration Customs Enforcement upon release |
| 00:30:37 | 12 | from imprisonment for deportation forthwith back to |
| 00:30:40 | 13 | Guatemala.  So I think -- |
| 00:30:42 | 14 | MS. RICE:  And we would believe that as |
| 00:30:44 | 15 | well, Your Honor.  I just wanted to make sure the record |
| 00:30:47 | 16 | was clear as to the special assessment. |
| 00:30:49 | 17 | And you referenced restitution.  I know that |
| 00:30:53 | 18 | Conrado Salgado Soto, who was sentenced in April, was |
| 00:30:57 | 19 | ordered to pay restitution jointly and severally for the |
| 00:31:01 | 20 | back pay.  We verified with the Clerk's office that |
| 00:31:04 | 21 | almost the entirety of that restitution has been paid -- |
| 00:31:06 | 22 | THE COURT:  Really? |
| 00:31:08 | 23 | MS. RICE:  -- to date.  So we would ask the |
| 00:31:11 | 24 | Court for any outstanding restitution amounts that are |
| 00:31:15 | 25 | owed, that she be ordered to pay joint and severally as |

00:31:18   1   well.  For the record, that amount of back pay wages is

00:31:26   2   $62,482.

00:31:32   3             THE COURT:  Counsel, do you have a copy of

00:31:34   4   the plea agreement?

00:31:35   5             MS. RICE:  I do, Your Honor.  Would you like

00:31:40   6   me to approach?

00:31:41   7             THE COURT:  Please.  Why don't you just show

00:31:43   8   it to Mr. Dech to confirm that that's it.

00:32:05   9             (Document is given to the Judge.)

00:32:08  10             THE COURT:  I do have one question.  One of

00:32:10  11   the victim impact statements indicates that $2,300 was

00:32:14  12   seized from that individual.  Do you know what's

00:32:24  13   happened to that?  Has he gotten that money back?

00:32:26  14            MS. RICE:  Yes, Your Honor.  In one of our

00:32:28  15   supplemental sentencing memorandums we indicated the

00:32:31  16   status, that we have reached out to his attorney.  We've

00:32:34  17   been in contact with his attorney, and are coordinating

00:32:40  18   having that money returned.  We also have reviewed other

00:32:44  19   items that were seized during the searches of other

00:32:47  20   victims and have notified each of the victims regarding

00:32:50  21   their personal property to have it returned.

00:32:58  22            The last thing I would like to mention, I

00:33:01  23   know we read into the record at the last sentencing

00:33:03  24   hearing in April a number of the victim impact

00:33:05  25   statements.  And, in fact, two of the minor victims were

00:33:08  1   present, including victim number 6.  And I just refer to

00:33:14  2   his victim impact statement because he specifically

00:33:16  3   names this Defendant in his victim impact statement and

00:33:21  4   expressed his concern and worry of his and his family's

00:33:26  5   safety because he trusted her.

00:33:31  6              THE COURT:  I think they -- whether they

00:33:32  7   provided victim impact statements or not, appeared in

00:33:36  8   court or not, they clearly have expressed uniformly

00:33:40  9   apprehension for their own welfare and even more

00:33:45  10  significantly that of their families.  And there's

00:33:49  11  simply no way -- anything we can do to protect their

00:33:51  12  families from whatever retribution might be forthcoming.

00:33:55  13  Again, I think that too is a consideration that causes

00:34:00  14  me to look elsewhere in the plea agreement for an

00:34:06  15  appropriate sentence in this case to the extent that

00:34:11  16  incapacitation will serve a useful purpose in particular

00:34:16  17  in protecting these minors, any of the victims, and

00:34:19  18  their families.  That may not have much of an effect,

00:34:26  19  but to the extent it might, I think that's also a factor

00:34:29  20  for me to consider.

00:34:30  21             MS. RICE:  Your Honor, the last thing I

00:34:31  22  would ask is there were some additional victim impact

00:34:34  23  statements submitted since the last sentencing hearing.

00:34:37  24  Victim number 1 from the indictment speaks more directly

00:34:41  25  to Aroldo Castillo-Serrano.  At some point I would like

| | | |
|---|---|---|
| 00:34:46 | 1 | to read this into the record.  Whether it's now or |
| 00:34:48 | 2 | during his sentencing hearing, I'll defer to the Court. |
| 00:34:52 | 3 | THE COURT:  Probably during his sentencing |
| 00:34:54 | 4 | hearing. |
| 00:34:54 | 5 | MS. RICE:  Thank you, Your Honor.  And then |
| 00:34:58 | 6 | there were the other six that were translated from |
| 00:35:00 | 7 | Spanish to English.  I just wanted to make sure the |
| 00:35:03 | 8 | Court received those. |
| 00:35:03 | 9 | THE COURT:  I have yet to do so.  I just got |
| 00:35:06 | 10 | them this morning.  I will do so in a moment. |
| 00:35:08 | 11 | MS. RICE:  Thank you, Your Honor. |
| 00:35:09 | 12 | THE COURT:  In fact, why don't I do that |
| 00:35:14 | 13 | right now.  It may take a moment -- it may take several |
| 00:35:21 | 14 | moments.  I got theses from the probation officer this |
| 00:35:36 | 15 | morning.  And I will have them made a part of the -- a |
| 00:35:40 | 16 | copy made a part of the Presentence Report. |
| 00:35:43 | 17 | Mr. Dech, have you seen -- in fact, why |
| 00:35:46 | 18 | don't we simply have this marked for purposes of this |
| 00:35:50 | 19 | proceeding as Exhibit A. |
| 00:35:52 | 20 | MR. DECH:  Yes, Your Honor, I received it. |
| 00:35:53 | 21 | THE COURT:  Court Exhibit A.  DeAnna, if |
| 00:35:55 | 22 | you'll mark that. |
| 00:35:56 | 23 | MR. DECH:  I received and reviewed those. |
| 00:36:30 | 24 | (Exhibit A is marked.) |
| 00:38:55 | 25 | (A short pause.) |

| | | |
|---|---|---|
| 00:50:53 | 1 | THE COURT:  I have completed reading the |
| 00:50:57 | 2 | addition statements and note that they principally |
| 00:50:59 | 3 | relate to the other defendant who is going to be |
| 00:51:02 | 4 | sentenced later.  Although there is some reference from |
| 00:51:06 | 5 | one of the victims to this defendant having -- he was |
| 00:51:08 | 6 | able to purchase a car.  She had it put in her name, |
| 00:51:18 | 7 | then he basically lost it.  Do I read that correctly? |
| 00:51:22 | 8 | It was the second or third -- maybe the first victim |
| 00:51:26 | 9 | statement. |
| 00:51:26 | 10 | MS. RICE:  Your Honor, I believe it was |
| 00:51:27 | 11 | another female, not this Defendant. |
| 00:51:29 | 12 | THE COURT:  Pardon me. |
| 00:51:30 | 13 | MS. RICE:  It was another female who had the |
| 00:51:32 | 14 | car put in her name, not this Defendant. |
| 00:51:34 | 15 | THE COURT:  Okay.  Mr. Dech, let's start |
| 00:51:43 | 16 | with my initial statement in which I described my |
| 00:51:46 | 17 | reaction to what I read in the factual basis and the |
| 00:51:50 | 18 | Plea Agreement and the Offense Conduct portion of the |
| 00:51:56 | 19 | Presentence Report and the victim impact statements with |
| 00:52:01 | 20 | regard to the factual basis for my views.  Is there |
| 00:52:03 | 21 | anything that I have misapprehended in terms of the |
| 00:52:09 | 22 | enticement in which she was involved in Guatemala; her |
| 00:52:15 | 23 | active role in unlawfully and illegally representing |
| 00:52:22 | 24 | herself as an appropriate person to bring these minors |
| 00:52:26 | 25 | into this country; the role she played, sort of a |

00:52:32   1  co-overseer or the overseer when the principal defendant

00:52:38   2  was not on the premises, what, in essence, according to

00:52:45   3  my understanding of the Presentence Report, was the

00:52:48   4  captivity in which many of the victims were held?  And

00:52:53   5  that place of that confinement was a set of trailers,

00:52:59   6  six, I believe, conditions that can only be described as

00:53:05   7  inhumane and despicable in the extreme; at most a space

00:53:11   8  heater in the winter; apparently at least one of the

00:53:14   9  trailers had no heat whatsoever; vermin infested, odor

00:53:20  10  of manure, toilets that didn't work.  And then the theft

00:53:27  11  of the income that they, in fact, earned; the seizure of

00:53:34  12  their paychecks upwards of $100, up to $450.  The

00:53:41  13  charging monthly of about $4,500 worth of rent, close

00:53:47  14  quote.

00:53:53  15          Is there anything in how I have described

00:53:56  16  those circumstances relative to the factual basis for

00:54:01  17  that description as found in the Presentence Report in

00:54:06  18  the statement of the Factual Basis in the Plea

00:54:12  19  Agreement?  If so, tell me; disabuse me.

00:54:16  20          MR. DECH:  I'm sorry, Judge.

00:54:17  21          Judge, I would first note that I don't

00:54:20  22  believe and Ms. Pedro Juan was not enticing people to

00:54:25  23  come from Guatemala.  She did sign the documents in

00:54:29  24  which she said she'd be the caretaker for the minor

00:54:32  25  parties while she was in the State of Ohio.  That was

```
00:54:34   1   after she moved here, I believe.  And --
00:54:37   2            THE COURT:  I thought one of the victim
00:54:39   3   impact statements indicated that she -- one of the
00:54:43   4   victims, she was related to him in one way or another.
00:54:51   5            MR. DECH:  If I can have one moment, Your
00:54:53   6   Honor.
00:54:53   7            THE COURT:  Again, counsel -- let me ask the
00:54:55   8   Government.  Have I misstated my understanding of the
00:55:00   9   factual situation or circumstances as detailed in the
00:55:06  10   Presentence Report, the victim impact statements, and
00:55:10  11   the Factual Basis in the Plea Agreement?
00:55:13  12            MS. RICE:  Your Honor, first of all, she was
00:55:15  13   not in Guatemala at the time of the enticement.
00:55:19  14            THE COURT:  I was wrong about that.  Thank
00:55:21  15   you.
00:55:21  16            MS. RICE:  However, the evidence shows she
00:55:23  17   was aware and spoke with Aroldo Castillo-Serrano about
00:55:27  18   this plan to start recruiting minors.  And then it would
00:55:32  19   be easier to come in -- get into the United States, and
00:55:34  20   then she could take custody of them from the Office of
00:55:38  21   Resettlement. So she was aware of the --
00:55:40  22            THE COURT:  She was complicit in what was
00:55:42  23   going on --
00:55:43  24            MS. RICE:  Correct, Your Honor.
00:55:43  25            THE COURT:  -- knew these individuals were
```

| | | |
|---|---|---|
| 00:55:45 | 1 | being recruited by the principal defendant? |
| 00:55:48 | 2 | MS. RICE:  Correct. |
| 00:55:50 | 3 | THE COURT:  And obviously actively |
| 00:55:52 | 4 | participated with at least some of them in getting them |
| 00:55:55 | 5 | in this country when otherwise they would not have been |
| 00:55:59 | 6 | able to do so. |
| 00:56:00 | 7 | Go ahead. |
| 00:56:01 | 8 | MR. DECH:  Yes, thank you, Judge. |
| 00:56:03 | 9 | Judge, I would note that she admits to |
| 00:56:05 | 10 | signing the documents with the appropriate government |
| 00:56:09 | 11 | authority to be the caretaker. |
| 00:56:11 | 12 | As it relates to my client's role while she |
| 00:56:14 | 13 | was here in the State of Ohio, in speaking with her she |
| 00:56:17 | 14 | too was frightened, as were the victims of Aroldo.  She |
| 00:56:22 | 15 | states that she was following orders from him.  She paid |
| 00:56:25 | 16 | $13,000 for a smuggling fee to come to the United |
| 00:56:30 | 17 | States.  As soon as she got to the United States, she |
| 00:56:32 | 18 | was told of a job where she would be a |
| 00:56:34 | 19 | housekeeper/nanny.  And rather that she was held in her |
| 00:56:41 | 20 | own captivity in the home where she was sexually |
| 00:56:43 | 21 | assaulted.  She was actually taken by Aroldo out of that |
| 00:56:48 | 22 | home, and there were plans to go to the state of Iowa. |
| 00:56:52 | 23 | Then she too worked in these farms and also in a Mexican |
| 00:56:56 | 24 | restaurant.  And in furthering this, she would receive |
| 00:57:00 | 25 | the monies from the parties and then cash the checks and |

00:57:04  1   then directly send all of the money to Guatemala where

00:57:07  2   she did not profit from them like Aroldo did in this

00:57:13  3   manner.  So we would ask the Court to consider that as a

00:57:18  4   factual basis for it.  She was complicit, but not to the

00:57:22  5   extent of the other parties.  She was more of a courier.

00:57:26  6          THE COURT:  But she chose to continue to

00:57:28  7   engage in those activities, correct?

00:57:30  8          MR. DECH:  She did engage in those

00:57:31  9   activities while she was also still working on the

00:57:35  10  farms, Your Honor, as were the other parties.

00:57:38  11          THE COURT:  Go ahead.

00:57:39  12          MR. DECH:  Thank you, Judge.  Judge, as I

00:57:41  13  previously stated, she came to this country illegally.

00:57:46  14  She paid $13,000 for a smuggling fee.  She was first in

00:57:51  15  Houston.  She had desires or dreams to go to the state

00:57:57  16  of Michigan to work with her cousin.  However, she ended

00:58:02  17  up in the State of Ohio.  She worked at Trillium Farms

00:58:06  18  for a period of time where she received a very nasty

00:58:09  19  burn on her hand and was unable to continue in her work

00:58:13  20  there.  She also worked in a Mexican restaurant as a

00:58:17  21  server, then was working at Highland Farms.  So

00:58:22  22  throughout this she maintained her employment, similar

00:58:25  23  to the other parties.

00:58:27  24          As it relates to what she did, she states

00:58:31  25  that she, too, was scared of Aroldo.  She was frightened

00:58:36  1  of him.  She took the monies, cashed the checks, then

00:58:40  2  forwarded the money back to Guatemala.  So she did not

00:58:44  3  receive some type of escalated pay as a result of her

00:58:48  4  activities.

00:58:55  5          As stated, she was sexually assaulted.  She

00:58:58  6  admits lying to the FBI.  She met with them and admits

00:59:03  7  to her participation in that.

00:59:08  8          There was some talk about an offering of

00:59:11  9  jobs that came from my client.  Judge, she states that

00:59:15  10  Aroldo was responsible for that and that her

00:59:18  11  participation was she signed the documents with the

00:59:22  12  government agencies, and then also she did collect the

00:59:25  13  money and send all the money back to Aroldo in

00:59:30  14  Guatemala.

00:59:32  15          Judge, she realizes that she will be

00:59:35  16  immediately deported following the sentence in this

00:59:38  17  matter.  She also understands that if she were to come

00:59:41  18  back to the United States after her exclusion from the

00:59:44  19  United States, she would be subject to a greater penalty

00:59:49  20  for that crime and also possible supervised release

00:59:54  21  conditions, which I'm sure would include not to reenter

01:00:00  22  the United States illegally.

01:00:01  23          Judge, if the Court were to follow the Plea

01:00:04  24  Agreement and sentence within the guidelines and, as the

01:00:07  25  Government stated, to the higher end of the guidelines,

01:00:09  1   we feel that such a sentence would be sufficient and not

01:00:14  2   greater than necessary, and I believe it would deter

01:00:18  3   others from engaging in this activity.

01:00:25  4           THE COURT:  Okay.  Ms. Donohue, please

01:00:31  5   inform the defendant she has the right to speak on her

01:00:33  6   own behalf and to urge me to be more lenient rather than

01:00:41  7   more punitive.

01:00:49  8           THE DEFENDANT:  It's true everything that

01:00:50  9   the attorney said.  I was also a victim, and I suffered

01:00:59  10  as the others did, maybe worse.  When I arrived in the

01:01:07  11  United States I was going to go to Michigan -- when I

01:01:12  12  arrived in the United States, I was going to go

01:01:15  13  Michigan, but Aroldo didn't let me go.  He said:  I

01:01:26  14  looked for a job for you here.  In Michigan you're not

01:01:29  15  going to earn enough to pay me back the $13,000.  On the

01:01:42  16  second day his cousin came and he had an American

01:01:46  17  friend, and the friend said that he needed a babysitter.

01:01:56  18  And since my job since I was seven years old in

01:01:59  19  Guatemala, my father made me work, and he had me take

01:02:02  20  care of children, and I liked taking care of children.

01:02:07  21  And I said:  Yes, I'll go take care of children here.

01:02:17  22  And so Aroldo called the American, and in the afternoon

01:02:20  23  the American came for me.  And he got into my head.  He

01:02:35  24  said:  Here in the United States we come here to work.

01:02:39  25  Good luck.  Do well.  And I went with the American in

01:02:46  1   the car.  And I was afraid.  I didn't know anything.  It

01:02:49  2   was my second day in the United States.  And the

01:03:03  3   American in the car, he started to ask me questions like

01:03:06  4   if I had lice on my head; if I was sick; if I had a

01:03:10  5   boyfriend; if I was a virgin.  A lot of questions.  A

01:03:14  6   lot of questions.  When I was halfway, he told me:  I

01:03:26  7   don't have kids; I don't need a babysitter.  It's very

01:03:36  8   painful to remember all of this.  I wanted to open the

01:03:46  9   door, but it was locked.  And he kept driving in the

01:03:51  10  car.  He told me:  You're going to be all right.  And we

01:03:58  11  arrived at the house.  And I saw that there was a big

01:04:08  12  dog at the door.  And he put me in the living room.  He

01:04:13  13  fixed dinner.  And he fed me in the living room.  He

01:04:23  14  never took me to the kitchen or the room.  I was just

01:04:27  15  always in the living room.

01:04:31  16          And when he came to give me the food, he was

01:04:33  17  carrying a cup of something, glass of something, like of

01:04:37  18  wine.  And he said:  Drink it.  I said:  No, it's bad.

01:04:51  19  And he said:  No, drink it because you're sick and you

01:04:54  20  need to clean out your stomach with this.  You walked in

01:04:58  21  the desert, and you're sick.

01:05:03  22          The second day I was in the living room.  I

01:05:06  23  didn't move from there.  He would fix the food and

01:05:13  24  everything.  I never saw how he would prepare the food.

01:05:16  25  He would make the food.  And at night he would give me a

01:05:22   1   glass of wine.  I don't know what kind of wine it was,

01:05:29   2   but it made me sleepy and it tasted bitter.

01:05:34   3          The third day I was sitting on the cushion,

01:05:44   4   and I had a thorn in my knee.  When I was in the desert

01:05:48   5   I'd gotten a big thorn in my knee.  I couldn't get up

01:05:51   6   off the cushion.  He said:  What's wrong?  And I said:

01:05:56   7   Nothing.  He says:  You have something wrong with you.

01:06:03   8   Let me give you a massage.  Let me put a cream on you.

01:06:07   9   I told him no because I was afraid of him.  All I did

01:06:12  10   was cry.  He said:  I'm an attorney; I'm going to fix

01:06:20  11   your papers for me.  You can study English on my

01:06:23  12   computer.  He said:  I don't have a wife; I'm divorced.

01:06:34  13   I've been divorced for eight years.   I have three

01:06:37  14   children; one is 15, and the other ones live with their

01:06:43  15   wife -- or mother.

01:06:50  16          On the fourth day he said:  You're not

01:06:52  17   staying in the living room anymore.  I'm going to give

01:06:55  18   you a room.  And I said:  All right.  I thought maybe it

01:07:01  19   will be a door and he won't go in there with me.  But

01:07:08  20   that's not how it was.  He went into the room.  He had

01:07:11  21   the keys to the door.  He had his pajamas on and

01:07:16  22   everything.  And he had bought me cloths to sleep in

01:07:21  23   that were transparent.  But that time when I slept in

01:07:28  24   that room I didn't change my clothes.  I just slept how

01:07:31  25   I was.  He came in.  I was very afraid, and he told me

01:07:38   1   to take off my clothes.  That's when he started to touch

01:07:50   2   me and everything.  And I wanted to yell, but his son

01:07:53   3   was sleeping on the second floor.  He said:  If you

01:08:00   4   yell, I'm going to call Immigration so you'll be

01:08:03   5   deported.  He put a rag in my mouth.  I couldn't do

01:08:10   6   anything.  That's when he touched me and everything.

01:08:15   7           The next day the cousin, Aroldo's cousin,

01:08:23   8   who sent me with him, he came to his house.  I said:  I

01:08:28   9   don't like it here.  I'm going to go with you.  And he

01:08:31  10   said:  No, he's going to take you.  I was there for

01:08:38  11   three more days.  And he did everything he wanted to do

01:08:43  12   to me.

01:08:50  13           All that is the big nightmare I had since

01:08:53  14   2012 until I came here.  It's not easy for me.  After

01:09:06  15   that Aroldo found out I didn't want to be there, and he

01:09:10  16   started calling the American.  He put up a big fight for

01:09:14  17   me.  I was a virgin and everything, but when the

01:09:26  18   American did what he wanted to do with me, he went and

01:09:29  19   left me there in the trailers.  He left me there, and he

01:09:41  20   said:  I'm an attorney.  If you say anything, I'm going

01:09:45  21   to call Immigration.  They're going to have you

01:09:47  22   deported.  And I didn't say anything.

01:09:52  23           But a month later I couldn't stand what I

01:09:55  24   was feeling anymore.  One night I went behind the

01:10:05  25   trailer.  I couldn't have this inside of me anymore.  I

01:10:08 1 wanted to get it out of me.  I started to look for

01:10:11 2 Aroldo and his nephew and his niece.  They found me

01:10:17 3 there crying.  Later I told him everything that had

01:10:25 4 happened.  But Aroldo didn't do anything.  I thought he

01:10:32 5 was going to call the police or something, but he never

01:10:35 6 did anything.  What he wanted was the $13,000.

01:10:43 7 And about a weak later or five days, he

01:10:49 8 found me a job at Trillium Farms, and I worked there.

01:11:03 9 And I don't know how much.  Like, in June I had the

01:11:06 10 accident on my hand for working to pay the $13,000.  The

01:11:18 11 managers didn't help me at all.  They went to Texas.

01:11:29 12 Aroldo asked for money for me from the contractors

01:11:34 13 saying:  Give me $5,000, and I won't tell the police.

01:11:43 14 The contractor said:  Yeah, I'll give it to you.  But

01:11:51 15 then he left.  He was fired from the job, and he didn't

01:11:54 16 get the $5,000.  And then after that I was sick in my

01:12:10 17 room from what the man did to me.  And I kept working,

01:12:13 18 but then I couldn't work anymore, and they took me to

01:12:15 19 emergency.

01:12:16 20 THE COURT:  Took her where?

01:12:19 21 THE DEFENDANT:  To emergency.

01:12:22 22 And the doctors told me that I had a cyst on

01:12:28 23 my ovary because of the blows that he had given me.  I

01:12:41 24 thought you could get cysts from falling or something.

01:12:46 25 But later I started to realize it was because of what

01:12:48  1   the man did to me.  I didn't say anything to the doctors

01:12:55  2   because I was afraid that I would be deported.

01:13:08  3           About a year later I started to have some

01:13:11  4   contacts from the consulate for Guatemala in Chicago.

01:13:23  5   And the workers there started giving me some numbers for

01:13:27  6   some people from Columbus.  I starred to live in

01:13:30  7   Columbus.  After what the man did to me, lived in

01:13:34  8   Columbus.  I could go there because Aroldo, he was in

01:13:39  9   jail in Marion, Ohio.  And I arrived there, and there

01:13:53  10  were some social workers, and I told them my whole story

01:13:57  11  about what the man had done to me.  They told me that I

01:14:02  12  didn't have enough evidence, and it had already been a

01:14:08  13  year and that they weren't going to help me.  They gave

01:14:12  14  me the number of a detective.  And he told me:  I work

01:14:22  15  here in Columbus; he couldn't go to Marion, Ohio.  He

01:14:37  16  said that I had to go to bring -- I don't know what it's

01:14:40  17  called.  He said I had to go to the police in Marion,

01:14:43  18  Ohio to tell them what happened.  But I never went.

01:14:48  19  There was nobody to help me.

01:14:55  20          I know that I'm not innocent.  I acknowledge

01:15:00  21  that.  But I helped two minors, not eight, not nine,

01:15:11  22  that I signed so they could go to school.  I know that.

01:15:23  23  God knows this.  I never offered them jobs; I never

01:15:27  24  offered them a salary; I never did the business.

01:15:31  25  Aroldo is the one who did the business.  It's true that

```
01:15:42   1   I signed for custody of two of the minors, one who was
01:15:48   2   for the cousin, Aroldo's nephew; and my cousin came
01:15:56   3   because he didn't want to go to school, but he wanted to
01:16:01   4   go live with his cousin.  I called the social workers,
01:16:08   5   the ones who had talked to Immigration or -- I don't
01:16:11   6   know.  I told them he wasn't with me anymore, that he
01:16:17   7   went with his cousin.  And they said they -- they
01:16:30   8   told me they were going to come visit him, and they
01:16:32   9   agreed they were going to call me, and they had my
01:16:35  10   telephone number, but they never called me.
01:16:54  11          It said that the trailers were in bad
01:16:56  12   condition and they weren't repaired.  How was I going to
01:16:59  13   repair them if they weren't mine and I didn't have money
01:17:03  14   either?  I don't have any money.  I never made any
01:17:11  15   money.  According to me, I was helping them.  According
01:17:20  16   to me, for me I was doing them a favor without knowing
01:17:23  17   it was against the law.  I wrote a letter.  I don't know
01:17:37  18   what time it can be read.
01:17:41  19          THE COURT:  I didn't hear what she just
01:17:42  20   said, Ms. Donohue.
01:17:44  21          THE DEFENDANT:  I wrote a letter.  I don't
01:17:47  22   know at what time it can be read.
01:17:49  23          THE COURT:  Now .
01:18:13  24          THE DEFENDANT:  Hello, Your Honor.  Thank
01:18:21  25   God for allowing us to have one more day of life for
```

each one of us.  I apologize 1,000 times for daring to write you this simple paper.  The reason is the following:  I ask you from all my heart to have pity on me, please.  I am very sorry for all of these things that I did, for not having knowledge of the law.  For me always helping them when I was doing them all of these favors, without knowing that I was making a big mistake.  In reality I didn't know about the laws or all of the consequences that could occur after all of these things that I ended up doing.  Aroldo, Conrado, and Pablo, they knew all of the laws.  But they didn't tell me anything, and they kept doing their business, and they never stopped any of these things.  They were the ones who made money, and not me.  I never even made one dollar.  Aroldo knows all of this perfectly well.  He knew that all I did was do favors.  None of the ones who are accusing me made any deal with me.  But before they came here, they made a deal with Aroldo.

          Like I said, I know I'm not innocent.  But not all the things that they have said have been true.  I never forced them to work.  I was never behind them 24 hours a day.  I lived in Columbus.  When one didn't work, Aroldo was the one who told me:  Call Conrado; I have to talk to him.  And I would do the transfers sometimes.  And Conrado would give them the complaint:

01:21:33    1    Your worker is not working.  And Aroldo in the

01:21:40    2    afternoon, he would talk to the workers.  He would talk

01:21:46    3    on the phone.  I don't know what he would say.  But when

01:22:09    4    Aroldo's son arrived, he was the one who would see

01:22:15    5    everything.

01:22:23    6            Sometimes I would send him money, but the

01:22:26    7    one who would deliver the money for food and the rides

01:22:30    8    and everything, that was the son.

01:22:38    9            This is my first time in jail.  I've never

01:22:42   10    had trouble with anybody, not in Guatemala either.  I

01:22:50   11    don't even know the jails in Guatemala.  I know that my

01:23:00   12    case is very different from other people.  I've never

01:23:11   13    stolen.  I've never hit much less killed anybody.  I

01:23:27   14    don't have the vice of alcohol or drugs, those things

01:23:31   15    that ruin people.  And the jail will -- I've never --

01:23:35   16    while in the jail I've seen how those things affect

01:23:38   17    people since I've been in jail.

01:23:49   18            Your Honor, as you can see, since I was

01:23:51   19    little I know how to learn from mistakes, and I know how

01:23:54   20    to not do it again.  And like I said before, I apologize

01:24:06   21    to you, to the state, and to all the people involved in

01:24:09   22    the law.  All of these things will not happen again.

01:24:28   23    Because being in jail is very hard.  I don't know what

01:24:31   24    my next step is that I have to take now.

01:24:36   25            These are my few words.  Thank you very much

01:24:42  1   for your attention and your time.  God bless you and

01:24:52  2   give you more wisdom to resolve every case of the

01:24:57  3   people.  Thank you.

01:25:03  4              THE COURT:  Anything further from the

01:25:04  5   defendant?

01:25:31  6              THE DEFENDANT:  That I'm afraid of Aroldo

01:25:33  7   also.  After my deportation, I don't know where I'm

01:25:36  8   going to go.  One day when he was in jail in Oklahoma I

01:25:47  9   heard him talking to his son.  The son had the -- the

01:26:04  10  son went to talk with him outside, but he had the

01:26:06  11  telephone on speaker.  I was at the window, and I could

01:26:14  12  hear everything that he was saying.  And he said:

01:26:28  13  Behave yourself with her.  Anything she asks for, a

01:26:31  14  favor or anything, don't deny her anything.  I'm in

01:26:34  15  jail.  He said:  If she calls the police, I can go to

01:26:49  16  prison; I can do more time.  And you know I don't play

01:26:53  17  around.  Her family is in Guatemala.  He's very

01:26:58  18  vengeful.  That's why I'm thinking now that I don't know

01:27:09  19  what's going to happen.

01:27:16  20             All this -- these businesses didn't start in

01:27:19  21  2014.  What I've thought about is that he was bringing

01:27:32  22  minors over before, not just up until now.  All the

01:27:38  23  people that I met when I arrived, a lot of them have

01:27:45  24  gone back to Guatemala.  This business of his he started

01:27:58  25  maybe 12 or 13 years ago, not just now.  This isn't

01:28:01  1  something new.  This has always been his business.  He

01:28:20  2  was always going to Guatemala, and he would always leave

01:28:23  3  somebody, somebody.  He would name somebody, but he

01:28:26  4  never named me.  He never said:  You stay here and take

01:28:31  5  care of this.  He never named me.  He never told me

01:28:34  6  that.  I think that that's all.

01:28:43  7              THE COURT:  I have several questions of the

01:28:45  8  Government.  And I'll try to ask them in some sort of

01:28:49  9  order.

01:28:50  10             First of all, it's my understanding, correct

01:28:55  11  me if I'm wrong, that there's a federal offense of

01:28:57  12  harboring an illegal immigrant.  Is that correct?

01:29:01  13             MS. RICE:  That's correct, Your Honor.

01:29:03  14             THE COURT:  Five year statute of

01:29:05  15  limitations?

01:29:06  16             MS. RICE:  Depending on certain

01:29:08  17  enhancements, if it's for profit.  The statute of

01:29:12  18  limitations --

01:29:14  19             THE COURT:  Right.

01:29:15  20             MS. RICE:  Yes, Your Honor.

01:29:16  21             THE COURT:  Has the government undertaken,

01:29:18  22  in light of her allegations about her treatment -- let

01:29:22  23  me ask you this:  According to your understanding of the

01:29:27  24  law regarding harboring an illegal alien, do the

01:29:33  25  conditions as she described them this morning to which

01:29:37  1    she was subjected by a person purporting -- holding

01:29:42  2    himself out to be a lawyer, would that constitute --

01:29:45  3    again, to your understanding -- harboring as defined in

01:29:51  4    the statute?   All I know is that there is such a

01:29:55  5    statute; I don't know what the element are.

01:29:57  6              MS. RICE:  Right, Your Honor.  Let me back

01:29:59  7    up a little bit before I answer that and say that the

01:30:01  8    amount of detail that was provided by the defendant

01:30:04  9    today is not what she provided in either of her previous

01:30:07  10   FBI interviews, one that lasted four to five hours.  Nor

01:30:11  11   is it -- was it provided to Pretrial Services.  So this

01:30:17  12   is all information that we're hearing for the first time

01:30:19  13   just today at her sentencing hearing, Your Honor.

01:30:21  14             THE COURT:  Well, you've answered my second

01:30:23  15   question, which is how much of what she just told me did

01:30:29  16   she tell at some previous -- on some previous time to

01:30:35  17   anybody in the Government to your knowledge.

01:30:37  18             MS. RICE:  Very minimal amounts as to what

01:30:40  19   was spoken about today.  And, in fact, as I think the

01:30:46  20   defendant stated, there were no police reports filed

01:30:48  21   with Marion or local law enforcement.

01:30:51  22             THE COURT:  Candidly, I think that's

01:30:53  23   understandable --

01:30:53  24             MS. RICE:  Certainly, Your Honor.

01:30:54  25             THE COURT:  -- because of deportation.

01:30:58  1      Let me simply say, obviously I leave this to

01:31:00  2  the Government whether it wants to pursue anything in

01:31:03  3  that regard with regard to the alleged perpetrator.

01:31:06  4  It's up to it.  I was just curious whether the

01:31:11  5  conditions as she described them had been known to

01:31:19  6  Government; and if so, had there been any follow-up.

01:31:22  7  And you've answered that question.

01:31:24  8      MS. RICE:  Yes, Your Honor.  And to be fair,

01:31:25  9  she had referenced being sexually assaulted.  But that

01:31:30  10  was the minimum of what she had stated during the hours

01:31:33  11  of interviews.

01:31:34  12      THE COURT:  Mr. Dech, if you want to follow

01:31:38  13  up with the authorities, either federal or state with

01:31:42  14  regard to those allegations, I would consider it

01:31:45  15  entirely appropriate for you to bill your time under the

01:31:49  16  Criminal Justice Act on behalf of your client.

01:31:51  17      MR. DECH:  Thank you, Judge.  She has talked

01:31:54  18  about this with me before, and it, I think, shows that

01:31:57  19  she came here with great intentions and was victimized

01:32:03  20  herself also by this person and by other parties.

01:32:05  21      THE COURT:  Well, let me -- I'm going to

01:32:07  22  read from some portions of the factual basis in the Plea

01:32:12  23  Agreement.  And I'm going to ask her if she agrees that

01:32:24  24  those facts are accurate as stated, as she has

01:32:28  25  previously indicated by signing the Plea Agreement.  I

01:32:33 1     want to read some excerpts.

01:32:37 2            And by the way, at the conclusion of this

01:32:42 3     proceeding I want to talk to counsel and Ms. Greenwood.

01:32:46 4     I would very much like to have the Offense Conduct

01:32:50 5     portion of the Presentence Report and the Factual Basis

01:32:54 6     of the Plea Agreement both unsealed and filed of record

01:32:59 7     so that they will be publicly accessible to anyone who

01:33:05 8     would care to read what I'm going to lay out.  Think

01:33:09 9     about that.  But it certainly is something I think would

01:33:12 10    be entirely appropriate so that those who might be

01:33:15 11    interested in finding out what went on to gain an

01:33:20 12    understanding of it in a more complete fashion rather

01:33:25 13    than my recitation of a portion of the factual basis.

01:33:28 14    And/or alternatively I assume I could read all of that

01:33:33 15    into the record, but I think it would be more

01:33:35 16    appropriate to have those portions unsealed, perhaps

01:33:39 17    also part or all of the victim impact statements.  I

01:33:43 18    realize that would be an even more delicate question.

01:33:46 19    It might not be appropriate, or there might be some

01:33:48 20    basis for objecting to that.

01:33:51 21           Please don't let me conclude this proceeding

01:33:55 22    without consulting with you on that.

01:34:11 23           In the Plea Agreement which the defendant

01:34:13 24    has signed and is a part of the requirements under Rule

01:34:24 25    11 before any plea can be accepted, as this one has

01:34:29   1   been, there has to be a factual basis for the finding of

01:34:36   2   guilt as to the particular charge or charges.  I'm now

01:34:48   3   reading from Paragraph F of the Factual Basis portion:

01:34:52   4   In March, 2013, Castillo-Serrano, the person to whom

01:34:59   5   she's been referring during much of her statement here,

01:35:05   6   returned to Guatemala and Defendant took over the

01:35:10   7   operations at the trailers.  From in or about March,

01:35:17   8   2013 to in or about December, 2014, Defendant and

01:35:22   9   Castillo-Serrano spoke regularly by phone and Defendant

01:35:27  10   reported to Castillo-Serrano on the status of the

01:35:32  11   victims.  Castillo-Serrano gave Defendant instructions

01:35:37  12   relating to the victims' housing, employment, and

01:35:43  13   confiscation of their paychecks.  Defendant monitored

01:35:49  14   the workers and controlled distribution of their pay

01:35:54  15   checks.

01:35:56  16           Starting in or about -- this is now

01:35:58  17   Paragraph G.  Starting in or about March, 2014,

01:36:02  18   Defendant aided and abetted Castillo-Serrano in focusing

01:36:12  19   recruitment efforts on the individuals under the age of

01:36:16  20   18, believing them to be easier to bring successfully

01:36:23  21   into the country, easier to control, and harder workers.

01:36:32  22   Castillo-Serrano enticed the victims to come to the

01:36:38  23   United States by promising their parents that they would

01:36:43  24   be able to attend school in the United States.

01:36:57  25           Paragraph H.  Defendant falsely represented

01:37:02  1   herself to immigration officials and the minor victims

01:37:07  2   as -- excuse me, as the minor victims' relative and/or

01:37:12  3   family friend in order to have the minor victims,

01:37:17  4   plural, released to Defendant's custody.  She also

01:37:21  5   arranged for other individuals to do the same, paying

01:37:27  6   them money in exchange for their false statements to

01:37:31  7   immigration officials.  In doing so, Defendant and the

01:37:38  8   other associates pledged under oath to insure the

01:37:43  9   victims were in school and were protected from abuse.

01:37:53  10              Paragraph I.  Defendant and Castillo-Serrano

01:37:58  11  compelled the victims to live in trailers owned or

01:38:02  12  controlled by Castillo-Serrano in order to keep the

01:38:06  13  victims under the Defendants', plural, control, and to

01:38:12  14  have them -- and have them to pay money in the form of

01:38:19  15  rent.  These trailers were often in substandard

01:38:25  16  conditions.  The victims were not free to move -- move

01:38:30  17  out of the trailers until their debts were paid.

01:38:35  18              And I assume the debts were never paid; is

01:38:40  19  that correct, the so-called debts?

01:38:41  20              MS. RICE:  Your Honor, with most of the

01:38:43  21  defendants -- excuse me, with most of victims, that is

01:38:46  22  the case.  At least one of the victims identified in the

01:38:49  23  indictment, he paid his debt in full, and

01:38:52  24  Castillo-Serrano told him he had to pay even more money

01:38:56  25  before he could be released.  But yes, the majority of

01:38:59  1    them were never able to pay.

01:39:02  2         THE COURT:  It calls to mind a song by

01:39:07  3    Tennessee Ernie Ford, "I owe my soul to the Company

01:39:15  4    Store.  Another day older, another day deeper in debt."

01:39:19  5    I think it's called "16 Tons," an old 1950s song.

01:39:31  6         Paragraph J.  Defendant and Castillo-Serrano

01:39:42  7    arranged for the victims to work at Trillium Farms,

01:39:47  8    called Trillium in this document, a Limited Liability

01:39:53  9    Corporation in Ohio.  Trillium owns and operates a

01:39:57  10   number of large egg farms in the Marion, Ohio area.

01:40:13  11        Paragraph K.  Defendant and Castillo-Serrano

01:40:17  12   directed victims to work at one of the Trillium Farms

01:40:22  13   under the direct supervision of subcontractors,

01:40:26  14   including other co-defendants in this case.  And I

01:40:30  15   paraphrased.

01:40:38  16        A portion of paragraph L.  The victims

01:40:48  17   regularly worked six or seven days a week between eight

01:40:51  18   and 12 hours a day.  The work was physically demanding,

01:40:57  19   dirty, and at times unsafe.  The minor victims and some

01:41:03  20   adult victims did not receive paychecks or full cash

01:41:07  21   equivalent for their labor, but instead the contractors

01:41:13  22   delivered the paychecks directly to Defendant or her

01:41:19  23   associates.  The victims were not given receipts for

01:41:25  24   their pay or debt payments.

01:41:30  25        I'm sorry that's paragraph L and M.

01:41:37   1          N.  The Defendant kept some of the monies

01:41:41   2   obtained from the victims' paychecks for her own use and

01:41:46   3   transferred the rest of the money to Castillo-Serrano or

01:41:50   4   other associates.

01:41:56   5          O.  The minor victims were given only small

01:42:00   6   amounts of money for their food and other needs.  On

01:42:07   7   multiple occasions Defendant refused the minors'

01:42:16   8   requests to obtain more money from their paychecks.

01:42:29   9          Paragraph P.  In or around December 2014, in

01:42:34  10   the Northern District of Ohio, Western Division, and

01:42:37  11   elsewhere, and after the FBI initiated an investigation

01:42:43  12   into Defendant's conduct -- Defendant, singular,

01:42:47  13   defendant's conduct -- Defendant and Castillo-Serrano

01:42:53  14   had at least one telephone conversation in which they

01:42:57  15   agreed to contact Castillo-Serrano's juvenile son and

01:43:09  16   persuade him to lie to the FBI about Defendants' role in

01:43:16  17   this human trafficking enterprise.  At the time of this

01:43:23  18   phone call Defendant, singular, knew that the FBI had

01:43:30  19   initiated an investigation into her role in the human

01:43:35  20   trafficking enterprise.

01:43:45  21          Paragraph Q.  In or around December, 2014,

01:43:53  22   in the Northern District of Ohio, Western Division,

01:43:56  23   Defendant, singular, participated in two voluntary

01:44:00  24   interviews with the FBI.  An interpreter was present

01:44:03  25   during the interviews and advised Defendant that it was

01:44:10  1    a crime to lie to federal authorities.  Despite the

01:44:22  2    warning, Defendant knowingly made numerous materially

01:44:26  3    false statements to the FBI agents, including that:  (1)

01:44:34  4    She did not have firsthand knowledge of

01:44:38  5    Castillo-Serrano's smuggling activities; (2) She did not

01:44:45  6    withhold victims' wages from them; (3) She did not send

01:44:53  7    victims' wages to Guatemalan accounts at the direction

01:44:57  8    of Castillo-Serrano; (4) She did not have a close

01:45:06  9    relationship with Castillo-Serrano; (5) She was not in

01:45:10  10   contact with Castillo-Serrano; and (6) She did not

01:45:14  11   advise Castillo-Serrano's son to lie to the FBI.

01:45:20  12              Paragraph 23.  Defendant acknowledges that

01:45:23  13   the above summation of Defendant's conduct does not set

01:45:29  14   forth each and every fact that the USAO, United States

01:45:34  15   Attorney's Office, could prove at trial; nor does it

01:45:38  16   encompass the acts which Defendant committed in

01:45:43  17   furtherance of the offenses to which Defendant is

01:45:47  18   pleading guilty.

01:45:51  19              Mr. Dech, I suggest that you talk to your

01:45:53  20   client about the need for me to find that she's accepted

01:45:58  21   responsibility.  And I intend to ask her whether she

01:46:03  22   concurs in those statements or if she repudiates any of

01:46:13  23   those statements; and if so, which ones.  Take whatever

01:46:17  24   time you want.  If you want to take a recess, I'd have

01:46:20  25   the Marshals accompany you into the judicial conference

01:46:28  1    room so you can discuss the issues with her in

01:46:30  2    confidence and also with Ms. Donohue.  One of the

01:46:33  3    deputies would, of course, have to be present during

01:46:37  4    that session.

01:46:38  5              MR. DECH:  We would ask to do so, Judge.

01:46:41  6              THE COURT:  Take a short recess.  Let me

01:46:43  7    know when you're ready to resume.  Take whatever time

01:46:46  8    you want.

01:46:53  9              (Recess taken.)

02:40:55  10             THE COURT:  Are we ready to resume?

02:40:57  11             MR. DECH:  Yes, Judge.

02:40:57  12             THE COURT:  Before we do, I simply want to

02:41:00  13   note that after consultation with counsel for both

02:41:04  14   defendants, representative of the government, and

02:41:09  15   informing the Pretrial Service/Probation Officer, I will

02:41:13  16   be filing of record shortly, I assume even before

02:41:19  17   completion of these proceedings, the offense conduct

02:41:22  18   portion of the presentence reports on each of these two

02:41:27  19   defendants.  I think in large measure they are

02:41:29  20   substantially the same.  I think they may be

02:41:33  21   duplicative, but they're substantially the same.

02:41:39  22             Have you talked to the case agent about

02:41:40  23   that?

02:41:42  24             MS. RICE:  No objection from the case agent,

02:41:45  25   Your Honor.

02:41:45  1          THE COURT:  It's okay with you?

02:41:47  2          MS. RICE:  Yes.

02:41:48  3          THE COURT:  I just want to double-check.  We

02:41:51  4  will redact the names of government officials to the

02:41:54  5  extent they appear in those segments, even though

02:41:58  6  they're otherwise a matter of public record.  I think

02:42:01  7  that's appropriate.  It's my understanding that this

02:42:04  8  defendant's plea agreement has never been under seal; it

02:42:06  9  is already a matter of record.  I'll have DeAnna

02:42:08  10  double-check that.  And with regard to Mr.

02:42:16  11  Castillo-Serrano's Factual Basis portion, I'll take that

02:42:20  12  up with his attorney in due course.

02:42:23  13          Okay.  Mr. Dech, you've had an opportunity

02:42:28  14  to consult with your client in light of my concerns.

02:42:31  15  Anything further that you wish to say on behalf of your

02:42:34  16  client?

02:42:34  17          MR. DECH:  Judge, there are a few areas in

02:42:37  18  which Ms. Ana Juan Pedro has some disagreement -- Ana

02:42:49  19  Angelica Pedro Juan has some disagreement.  One is in

02:42:52  20  regard to the date of taking over the trailer.  She

02:42:54  21  states it was in March of 2014; however, prior to that

02:42:59  22  time she states a person named Arturo Pedro was in

02:43:03  23  charge of the trailers.  However, there were three

02:43:06  24  occasions where he could not buy money orders; he gave

02:43:11  25  her the money to buy money orders, and she did so.

02:43:14  1        In regards to the paragraph on recruiting

02:43:18  2  minors, she knew that Mr. Castillo-Serrano would send

02:43:24  3  minors to the United States because it was easy;

02:43:26  4  however, she also states some came over as minors to get

02:43:31  5  false papers; however, they actually were adults.

02:43:35  6        In regards to the signing the paperwork to

02:43:42  7  be the caretaker for the minors, she states that she did

02:43:46  8  it for his son and also one for a cousin.  In regards to

02:43:51  9  paying others to sign on as caretaker, she states that

02:43:56  10  Mr. Castillo-Serrano set up the arrangements; however,

02:44:00  11  my client paid the people to do so.  She states that

02:44:05  12  they were never compelled to live in the trailers, and

02:44:10  13  that she knew one of them didn't have heat; however,

02:44:12  14  that person lived in that at his own will, for lack of a

02:44:17  15  better term.

02:44:18  16        THE COURT:  And you've advised her of the

02:44:20  17  consequences of contradicting her statements in her plea

02:44:24  18  agreement --

02:44:24  19        MR. DECH:  Yes.

02:44:24  20        THE COURT:  -- with regard to the acceptance

02:44:27  21  of responsibility?

02:44:28  22        MR. DECH:  Yes.  May I have one more moment,

02:44:30  23  Your Honor?

02:44:30  24        THE COURT:  Sure.

02:44:32  25        (Discussion had off the record between

02:44:35    1    Defendant and Defense Attorney.)

02:45:14    2                THE COURT:  Go ahead, Mr. Dech.

02:45:30    3                MR. DECH:  Judge, after speaking with my

02:45:32    4    client once again, she has now stated to me she would

02:45:35    5    accept responsibility for everything contained in the

02:45:37    6    plea agreement and that --

02:45:42    7                THE COURT:  And what is the Government's

02:45:44    8    understanding of the period -- if I understood correctly

02:45:47    9    from the Plea Agreement, Mr. Castillo-Serrano was in

02:45:52   10    Guatemala throughout the period March 2014, or whichever

02:45:59   11    year it was, until December?

02:46:02   12                MS. RICE:  Yes, Your Honor.  Defendant

02:46:05   13    Castillo-Serrano was deported back to Guatemala in or

02:46:08   14    around March, 2013, from that time period.

02:46:11   15                THE COURT:  I'm sorry?

02:46:15   16                MS. RICE:  From that period in March, 2013

02:46:18   17    until December, 2014 when the government initiated its

02:46:21   18    investigation Castillo-Serrano and this Defendant were

02:46:26   19    communicating over the telephone and committing other

02:46:30   20    acts.

02:46:30   21                THE COURT:  But she was the person on-site

02:46:33   22    overseeing the operation?

02:46:34   23                MS. RICE:  Correct, Your Honor.

02:46:35   24                THE COURT:  That's the Government's

02:46:36   25    representation to me.

02:46:37  1          MR. DECH:  Judge, in further speaking with

02:46:39  2  her, she accepts responsibility from that date and

02:46:42  3  accepts responsibility as it relates to the factual

02:46:44  4  basis and relevant conduct set forth in the Plea

02:46:47  5  Agreement and asks the Court to grant same.

02:46:51  6          THE COURT:  Okay.  Anything further on

02:46:52  7  behalf of the Government?

02:46:57  8          MS. RICE:  Thank you, Your Honor.  The Court

02:46:59  9  has already covered many of the facts that the Defendant

02:47:03  10  admitted to as part of her plea agreement.  I just

02:47:06  11  wanted to highlight specifically with respect to the

02:47:09  12  Office of Refugee and Resettlement that the Defendant

02:47:13  13  did not only indicate that she, herself, would be a

02:47:16  14  sponsor for two minors, but she also indicated that she

02:47:19  15  would be a cosponsor or, more specifically, if the named

02:47:24  16  sponsor could not insure the safety of the children,

02:47:27  17  she, herself, would do so.  She did that for at least

02:47:32  18  three other individuals.  So she was involved directly

02:47:35  19  in making statements to the Federal Government insuring

02:47:38  20  the safety of these children for at least five minors.

02:47:41  21          As she admitted in her plea agreement, she

02:47:44  22  arranged with other individuals to do this, to lie to

02:47:47  23  the Federal Government to obtain custody of the minors.

02:47:50  24          THE COURT:  I assume that any possible

02:47:52  25  utilities she may have otherwise had as a witness in any

02:47:57  1   further or ongoing investigation -- I'm not inquiring

02:48:00  2   whether there is such, but in any event, given her

02:48:06  3   deceptive conduct during the interviews and otherwise

02:48:13  4   her usefulness potentially as a Government witness is

02:48:16  5   nil?

02:48:16  6            MS. RICE:  Your Honor has very aptly and

02:48:19  7   correctly stated it, yes.

02:48:20  8            And the last thing I would like to comment

02:48:24  9   on is in reference to her earlier statement.  And

02:48:28  10  certainly we are sympathetic personally and on behalf of

02:48:33  11  the United States to assault.  However, it is very

02:48:39  12  disappointing that her response was to then victimize

02:48:43  13  those even more vulnerable than she was.

02:48:46  14           And, Your Honor, I think it's worth noting

02:48:51  15  who she apologized to during her allocution, and it did

02:48:54  16  not include any of these minors.

02:48:56  17           Thank you, Your Honor.

02:48:57  18           THE COURT:  I understand.  Mr. Dech,

02:48:59  19  anything further before I pronounce sentence?

02:49:01  20           MR. DECH:  Judge, I would just ask the Court

02:49:03  21  to grant acceptance of responsibility, and I would ask

02:49:07  22  the Court to stay within the guidelines set forth in the

02:49:10  23  plea agreement.  I believe that it would give a

02:49:13  24  sufficient sentence but not be greater than necessary.

02:49:18  25           THE COURT:  Do you have the PSR?

02:49:39  1          MS. RICE:  Your Honor, I apologize for

02:49:41  2   interrupting, but at the appropriate time we would move

02:49:44  3   the Court to dismiss certain counts against this

02:49:47  4   Defendant.

02:49:47  5          THE COURT:  That's fine.

02:49:48  6          MS. RICE:  So we would ask the Court to

02:49:50  7   dismiss Counts 2 through 7 of the superseding

02:49:53  8   indictment, Count 9, Count 10, Count 12, and Count 13 as

02:50:00  9   they relate to the Defendant Ana Angelica Pedro Juan.

02:50:05  10         THE COURT:  That motion will be granted.

02:50:23  11         I will leave the acceptance, a two-level

02:50:26  12  reduction as otherwise reflected in the Plea Agreement

02:50:29  13  as is.

02:50:31  14         Just to review the guideline range, it's

02:50:33  15  Base Offense level 34, Criminal History Category of I;

02:50:47  16  Guideline Range of 151 to 188 months.  I will vary

02:51:11  17  downward somewhat, and I will impose a sentence of 120

02:51:14  18  months with credit for time served while spent in

02:51:17  19  custody awaiting disposition of these proceedings.  That

02:51:21  20  will be followed by a three-year term of supervised

02:51:24  21  release.  The only condition of which will be following

02:51:26  22  her deportation and obviously upon completion of the

02:51:30  23  sentence from the custody of the Bureau of Prisons, she

02:51:33  24  will be remanded forthwith to the custody of Immigration

02:51:38  25  and Customs Enforcement for deportation back to

02:51:41  1    Guatemala.  The other condition of her supervised

02:51:44  2    release is that she not return to this country within

02:51:46  3    that three-year term.

02:51:48  4             In a moment I will explain my reasons for

02:51:51  5    the sentence, which does represent a variance downward

02:51:54  6    from the guidelines of 151 months.  That's a substantial

02:51:59  7    variance.  However, I do think that a sentence of 120

02:52:02  8    months is sufficient but not greater than necessary to

02:52:05  9    accomplish the purposes of sentencing.

02:52:07  10            I want to caution the Defendant that if she

02:52:09  11   ever comes back to this country again, she will be

02:52:12  12   apprehended at some point.  You'll be prosecuted, in

02:52:18  13   light of your present conviction and sentence, and you

02:52:22  14   can expect a very substantial sentence upon conviction

02:52:25  15   of a felony of illegal reentry following deportation.

02:52:32  16   So please forego any temptation you might otherwise have

02:52:36  17   to return to this country for any reason whatsoever.

02:52:42  18            I've already commented on my views of the

02:52:45  19   nature of the offense, but let me formally for the

02:52:51  20   record recite my reasons in light of 18 U.S. Code,

02:52:56  21   Section 3553(a).  I cannot emphasize strongly enough the

02:53:03  22   serious nature of this offense and this Defendant's role

02:53:07  23   in it, which she entirely unpersuasively sought to

02:53:12  24   minimize during her allocution.  She accepted basically

02:53:19  25   no responsibility for anything and portrayed herself as

02:53:22  1  a victim, while from March of 2013 until December 2014

02:53:28  2  she ran this operation.  She claims to have contact with

02:53:34  3  various social workers and other authorities.  At no

02:53:38  4  time apparently did she talk to any of them about what

02:53:41  5  was going on.  She claims she sought to help these

02:53:46  6  victims, and I'll let the absurdity of that comment

02:53:53  7  speak for itself.

02:53:57  8          I will grant acceptance of responsibility;

02:54:02  9  however, it is certainly not based upon anything she

02:54:07  10  said in open court this morning.  She has acknowledged

02:54:13  11  the accuracy of what I read into the record from her

02:54:16  12  Plea Agreement, which is a matter of public record.  She

02:54:21  13  basically, at least for some of the victims, stole their

02:54:26  14  childhood at an age when they came here anticipating to

02:54:31  15  become educated and enabled to become perhaps some day

02:54:36  16  American citizens and productive and contributing

02:54:39  17  members of our society so that they, in turn, could aid

02:54:42  18  their own families back home.  She deliberately deprived

02:54:48  19  them of any of those opportunities.

02:54:59  20          I think I've said enough about my views of

02:55:01  21  the seriousness of this offense and this Defendant's

02:55:05  22  participation in it.  I certainly hope that this

02:55:10  23  sentence gains respect for the law and the serious way

02:55:17  24  in which the law deals with conduct of this inhumane and

02:55:23  25  despicable sort.  I believe the sentence is just.  I

| | | |
|---|---|---|
| 02:55:30 | 1 | have taken into consideration this is a very young |
| 02:55:33 | 2 | woman, age 22 at the time of the preparation of the |
| 02:55:35 | 3 | Presentence Report.  So she was even a younger woman |
| 02:55:41 | 4 | herself when she committed these crimes.  She claims to |
| 02:55:44 | 5 | live in fear of the principal Defendant.  I find that |
| 02:55:46 | 6 | statement to be absolutely implausible.  She had ample |
| 02:55:50 | 7 | opportunity to, quote, escape, close quote, to notify |
| 02:55:57 | 8 | the authorities and to undertake to rectify the |
| 02:56:03 | 9 | circumstances in which the victims found themselves. |
| 02:56:06 | 10 | And I note according to the Government there weren't |
| 02:56:11 | 11 | just the ten victims recited the indictment; there were |
| 02:56:17 | 12 | upwards of 35 victims.  I certainly hope, as I've |
| 02:56:21 | 13 | expressed earlier, that the government undertakes all |
| 02:56:25 | 14 | possible efforts to see that this sentence and the |
| 02:56:29 | 15 | circumstances are communicated as broadly and as |
| 02:56:33 | 16 | extensively as possible so that anyone, anywhere, who in |
| 02:56:40 | 17 | any way engages in this kind of conduct, is aware of |
| 02:56:44 | 18 | this kind of conduct, tolerates this kind of conduct, |
| 02:56:47 | 19 | acquiesces in this kind of conduct, understands what |
| 02:56:52 | 20 | will happen when and if the Government is able to apply |
| 02:56:58 | 21 | its resources -- all too limited I'm afraid in this and |
| 02:57:03 | 22 | so many other areas -- to a successful investigation of |
| 02:57:07 | 23 | others who engage in this and depravity of this degree. |
| 02:57:15 | 24 | Public deterrence is a fundamental objective that I'm |
| 02:57:19 | 25 | trying to accomplish by my sentence.  I'm not entirely |

02:57:25  1    sure that individual deterrence has been served thus

02:57:28  2    far.  To the extent that it has not been, I hope my

02:57:32  3    sentence, particularly my response to her evasive

02:57:36  4    statement in mitigation, accomplishes that purpose.

02:57:47  5            I would hope that the public most likely to

02:57:52  6    be affected by this conduct, namely the victims who may

02:57:57  7    have returned to Guatemala and their families, that this

02:58:00  8    sentence serves to protect them.  Unfortunately, there's

02:58:05  9    no possible way that I can be assured of that.  To the

02:58:11  10   extent that this sentence becomes known and may help

02:58:14  11   ameliorate the conditions of others who, like these

02:58:18  12   victims, find themselves in involuntary imprisonment and

02:58:26  13   forced to endure the quasi slavery that these victims

02:58:33  14   endured, that perhaps others might take steps in light

02:58:39  15   of the sentence to respond to those conditions and see

02:58:44  16   to it that they are rectified.  So to that extent, I'm

02:58:49  17   trying to serve the public interest on behalf of others

02:58:53  18   who have been brought into this country and basically

02:58:57  19   treated in this manner elsewhere, whether in the

02:59:00  20   agricultural industry or any other.

02:59:06  21           Although I don't believe it is necessarily

02:59:09  22   one of the 3553(a) factors, I've already mentioned that

02:59:13  23   contrary to my general views of the purpose of

02:59:20  24   punishment, I think that the purpose of retribution is

02:59:25  25   served by the severity of the sentence, I certainly hope

02:59:29  1    it is, in the public sense of how somebody who did what

02:59:35  2    this woman did should be treated harshly and severely

02:59:40  3    simply to express the public condemnation and

02:59:44  4    castigation of the kinds of things that she did.

02:59:54  5              Is there anything further that the

02:59:55  6    Government would like me to say in light of the Section

02:59:58  7    3553(a) factors?

03:00:03  8              MS. RICE:  Your Honor, in light of the

03:00:07  9    3553(a) factors, nothing else.  We would ask, while the

03:00:12  10   restitution has been repaid in its majority, there is

03:00:15  11   still some outstanding.

03:00:16  12             THE COURT:  There will be a -- to the extent

03:00:19  13   there's a balance remaining, and I'll ask the Government

03:00:21  14   to notify the Clerk before judgement is entered sometime

03:00:25  15   today or tomorrow of the amount due and owing, this

03:00:29  16   Defendant will be required to pay restitution.  And to

03:00:32  17   the extent that that may be accomplished through any

03:00:36  18   deductions she may have while in prison, that obviously

03:00:40  19   should occur.

03:00:41  20             The Special Assessment in this case is how

03:00:42  21   much?

03:00:43  22             MS. RICE:  It is $100 because she is

03:00:45  23   indigent, Your Honor.

03:00:46  24             THE COURT:  There will be a special

03:00:47  25   assessment of $100.

03:00:50   1          Mr. Dech, is there anything further that you

03:00:52   2   believe I should express in light of the 3553(a)

03:00:57   3   factors?

03:00:57   4          MR. DECH:  Nothing further in regards to the

03:00:59   5   3553(a) factors, Your Honor.

03:01:02   6          THE COURT:  The right to appeal has been

03:01:04   7   waived.  I'm sure that you have discussed that in detail

03:01:07   8   with your client and the limited opportunity to

03:01:11   9   undertake to challenge the conviction or sentence as set

03:01:15  10   forth in the Plea Agreement.  If grounds to appeal

03:01:19  11   somehow appear to exist, your client should understand

03:01:24  12   she has 14 days following the entry by me of my judgment

03:01:28  13   in which to file an appeal.  She should also understand

03:01:31  14   that if she were to breach her promises to the Federal

03:01:40  15   Government as made in the Plea Agreement, the Federal

03:01:43  16   Government would not be bound to its promises, and the

03:01:47  17   case could proceed as originally indicted, and I would

03:01:52  18   expect that that's what would happen.

03:01:56  19          Does any party have any further objection to

03:02:01  20   any part of these proceedings, any stage thereof not

03:02:04  21   previously made?

03:02:05  22          MS. RICE:  Not on behalf of the United

03:02:07  23   States, Your Honor.

03:02:07  24          THE COURT:  Mr. Dech.

03:02:08  25          MR. DECH:  Nothing on behalf of the

03:02:09  1   Defendant, Judge.

03:02:10  2            THE COURT:  That will conclude this

03:02:11  3   proceeding.

03:02:51  4            (Recess taken.)

03:02:51  5            THE COURT:  In light of what she did

03:02:54  6   represent today, I realize her credibility may be

03:02:58  7   somewhat -- nonetheless, to the extent she was telling

03:03:00  8   the truth and a jury might believe it, I would hope that

03:03:03  9   the Government would proceed accordingly.  It's

03:03:09  10  simply -- unquestionably what she told us today is

03:03:18  11  hideous and horrifying.  It does not excuse her

03:03:21  12  subsequent conduct for many, many, many months.  On the

03:03:28  13  other hand, to the extent she was victimized in the way

03:03:33  14  she has described, it would seem to me an appropriate

03:03:37  15  inquiry to undertake by some authority and go from

03:03:41  16  there.

03:03:43  17           MS. RICE:  Thank you, Your Honor.

03:03:44  18  Certainly on behalf of the United States whatever new

03:03:47  19  information we can obtain from Mr. Dech or from local

03:03:52  20  law enforcement --

03:03:53  21           THE COURT:  It's entirely up to you.

03:03:56  22  Obviously if it would come to this Court, I would recuse

03:04:00  23  myself in view of my statement earlier.

         24           (Concluded at 12:05 p.m.)

         25                    - - -

1                    **C E R T I F I C A T E**

2

3       I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled

5   matter.

6

7   /s/ Tracy L. McGurk _____              ___8/10/16___

8   Tracy L. McGurk, RMR, CRR                     Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25