```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
 2                       WESTERN DIVISION

 3   UNITED STATES OF AMERICA,      Case No.: 3:15CR24

 4              Plaintiff,                  September 21, 2020

 5              v

 6   ANA ANGELICA PEDRO JUAN,

 7              Defendant.

 8   --------------------------------------------------

 9              TRANSCRIPT OF MOTION HEARING VIA ZOOM
                BEFORE THE HONORABLE JAMES G. CARR
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   On behalf of the plaintiff:

13   Chelsea S. Rice
     Office of the U.S. Attorney
14   801 Superior Avenue W, Suite 400
     Cleveland, Ohio 44113
15   (216) 622-3752

16   On behalf of the defendant:

17   Claire R. Cahoon
     Matthew J. Ahn
18   Office of the Federal Public Defender
     617 Adams Street, 2nd Floor
19   Toledo, Ohio 43604
     (419) 259-7370

20

21   Court Reporter:

22   Angela Nixon, RMR, CRR
     Official Court Reporter
23   United States District Court
     (419) 213-5518

24


25
```

```
 1            COURTROOM DEPUTY:  The Court is now in session

 2   before the Honorable James G. Carr, Judge of the United

 3   States District Court.  The case before The Court is USA

 4   versus and Ana Angelica Pedro Juan, case number 3:15CR24.

 5   The matter is called for a motion hearing on a 2255

 6   petition.  Government represented by Chelsea Rice.

 7   Defendant represented by Claire Cahoon and Matthew Ahn.  We

 8   also have Ana Lahr here from Interpreter Services.

 9            THE COURT:  Tina, will you please swear the

10   witness -- or the defendant to tell the truth, the whole

11   truth and nothing but the truth?

12                 (Whereupon the defendant, Ana Angelica Pedro

13                 Juan, was sworn in on the record.)

14            INTERPRETOR:  I do swear.

15            THE COURT:  Counsel for the defendant petitioner,

16   do you have a few brief remarks to frame today's

17   proceeding?

18            MS. CAHOON:  I do.  Thank you, Your Honor.  Just

19   very briefly because I'll leave the job of summing all this

20   up to Mr. Ahn to present argument at the close of our

21   hearing today.  But I want to provide a little bit of

22   context to The Court about what this case is and is not

23   about.

24            This case is not about the allegations which

25   Ms. Pedro Juan has already admitted.  Rather, this case is
```

1    about particularly access to The Court in imposing

2    convictions for individuals who are nonnative English

3    speakers, and also about the failure to present in

4    mitigation as being ineffective assistance of counsel.  And

5    with that little bit of framing, I'll defer our remarks

6    until after we complete our witnesses.  Thank you.

7            THE COURT:  Ms. Rice, anything that you wish to

8    state, likewise briefly, before the first witness is

9    called?

10           MS. RICE:  Thank you, Your Honor.  Briefly,

11   first, Ms. Pedro Juan is time barred from bringing this

12   motion before The Court as outlined in our response and

13   will be further outlined today.

14           Second, should this Court find that she is

15   granted equitable tolling, which the government believes

16   she is not, Mr. Dech performed competently and she can not

17   establish either prong of (unintelligible).

18           INTERPRETOR:  Your Honor, the interpreter is

19   having trouble hearing Ms. Rice, if Ms. Rice could please

20   repeat her last statement.

21           MS. RICE:  Thank you.  Even if this Court finds

22   that Ms. Pedro Juan is granted equitable tolling, which the

23   government believes she is not, she can not establish

24   either (unintelligible).

25           INTERPRETOR:  She can not establish either prong

1   of?

2           MS. RICE:  The Strickland test, as Mr. Dech

3   performed both competently.  And she can not meet her

4   burden of showing actual prejudice even if she shows he

5   acted below a standard of reasonableness.

6           THE COURT:  Okay.  And then let me ask the

7   interpreter, have you been sworn -- previously sworn to --

8   to translate faithfully statements made in English into

9   Spanish, and statements made in Spanish into English?

10          INTERPRETOR:  Yes, Your Honor, the interpreter

11  has been dually sworn.

12          THE COURT:  Okay.  And I apologize if any of us

13  interrupt because we are accustomed to having simultaneous

14  translation, so thank you for the job that you're doing.

15          INTERPRETOR:  You're welcome, Your Honor.

16          THE COURT:  Ms. Cahoon, you may proceed to call

17  your first witness.

18          MS. CAHOON:  Thank you very much, Your Honor.

19  The defense petitioner would call Ms. Pedro Juan.

20          COURTROOM DEPUTY:  She's already been sworn.

21                    DIRECT EXAMINATION

22  BY MS. CAHOON:

23  Q.       Good afternoon, Ms. Pedro Juan.

24  A.       Good afternoon.

25  Q.       Are you able to see and hear me okay?

```
 1   A.        Yes.

 2   Q.        Very good.  Could you please state your full name

 3   for the record?

 4   A.        Ana Angelica Pedro Juan.

 5   Q.        And Ms. Pedro Juan, where are you from

 6   originally?

 7   A.        Guatemala.

 8   Q.        And what is your native language?

 9   A.        Q' anjob' al.  It's a dialect.

10   Q.        Thank you.  Do you speak Spanish at all?

11   A.        Yes, but there are words that I cannot

12   understand.

13   Q.        So would it be fair to say that you speak your

14   native language a little bit better than you speak Spanish?

15   A.        Yes.

16   Q.        And do you speak any English as we are here

17   today?

18   A.        Yes.

19   Q.        So I'd like to take you back to when this case

20   originally started.

21             When you were preparing your plea and sentencing

22   back in 2015, did you speak any English at that point?

23   A.        Nothing.

24   Q.        You spoke no English at all?

25   A.        Nothing.
```

1    Q.        What about your Spanish at that time?  When your

2    case was going forward with the plea of guilty and

3    sentencing, how strong were your Spanish skills?

4    A.        About 60 percent.

5    Q.        Were you ever, during the course of your case,

6    able to communicate with your attorney with an interpreter

7    who spoke your native dialect?

8    A.        No.

9    Q.        How would your attorney communicate to you, in

10   what language?

11   A.        Spanish.

12   Q.        And was that with the use of an interpreter, or

13   did Mr. Dech speak Spanish?

14   A.        The interpreter.

15   Q.        And I want to make sure I understand your earlier

16   answer correctly.  When you said 60 percent, do you mean

17   you understood about 60 percent of what was said, or did

18   you mean something different?

19   A.        Yes, I understood that much.

20   Q.        When Mr. Dech was assisting you with your

21   defense, did he review the written plea agreement with you

22   before you had your court hearing?

23   A.        I think he showed me some papers, but they were

24   in English and I could not read them.

25             THE COURT:  Excuse me, may I interrupt?

```
 1            MS. CAHOON:  Of course.

 2            THE COURT:  Is this challenge to the plea,

 3    sentencing or which, or both?

 4            MS. CAHOON:  Your Honor, this is purely a

 5    challenge to the mitigation presented at sentencing;

 6    however, the advisement about the plea is relevant because

 7    Ms. Rice argued in her response that there was an

 8    advisement about habeas in that plea that should have given

 9    her notice regarding equitable tolling.

10            THE COURT:  Thank you.  That was -- I asked that

11    question simply to confirm my understanding.

12            MS. CAHOON:  Thank you, Your Honor.  I appreciate

13    that.

14    BY MS. CAHOON:

15    Q.      So when you were discussing the plea agreement

16    with your previous defense lawyer, did he ever talk to you

17    about a statute entitled 28 U.S.C. 2255?

18    A.      I don't remember.

19    Q.      You remember him ever discussing the concept of a

20    habeas with you when he was representing you?

21    A.      I don't remember.

22    Q.      When you say I don't remember, do you mean that

23    you don't recall if the answer is yes or no, or do you mean

24    something different?

25    A.      I think it was a no.
```

1    Q.        Okay.  So just to clarify, do you believe that

2    Mr. Dech reviewed the concept of a habeas petition with you

3    during his representation?

4    A.        No.

5              THE COURT:  Excuse me.  I would suggest that you

6    ask if she has a present understanding of the term habeas

7    corpus because I think that's important that we --

8    important thing to take into account.  And you may want to

9    ask questions after that.

10             MS. CAHOON:  Indeed, Your Honor.  Thank you, Your

11   Honor.  I appreciate that direction, and I am preparing to

12   do that and lay out the timeline.

13             THE COURT:  That's fine.

14   BY MS. RICE:

15   Q.        Ms. Pedro Juan, since the time of your plea and

16   sentencing, did you come to understand that there was such

17   a thing as a habeas petition and get a greater

18   understanding of how it might be able to help you?

19   A.        I don't understand what that is.

20   Q.        Let me ask a better question.  I think that was

21   probably confusing.  After you began serving your prison

22   term, did you ever hear about the concept of a habeas

23   petition while you were serving your sentence?

24   A.        Once I got to the prison, yes.

25   Q.        Okay.  And where did you hear about habeas

1    petitions while you were serving your sentence?

2    A.        Through another inmate towards the end of 2017.

3    Q.        So when you first began serving your prison

4    sentence before 2017, did you speak any English at that

5    time?

6    A.        No.

7    Q.        Did you ever attempt to use the law library

8    during that time to learn more about challenges that you

9    could make in your case?

10   A.        Yes, but everything was in English.

11   Q.        So you just told us that in 2017 another inmate

12   mentioned the concept of habeas to you.  What was your

13   understanding at that point of what a habeas petition was?

14   A.        She was saying that she was taking some papers to

15   The Judge so that he would help her with her time because

16   there had been a mistake in her case and that would help

17   her.

18   Q.        And did that make you --

19   A.        And that name of that was the petition.

20             THE COURT:  Ms. Cahoon, you've been leading the

21   witness almost exclusively, okay.  And as a general rule

22   I'm not very tolerant towards that.  Okay, I know there's

23   no objection from the prosecutor.  May I suggest that you

24   might be better advised what was your reaction to that,

25   what did you do then, to whom did you speak, that sort of

1    thing.  I think it will go more quickly, and I'll get the

2    gist of her answers just as well.  Okay.

3            MS. CAHOON:  Thank you, Your Honor.

4            THE COURT:  The interpreter may continue.

5            MS. CAHOON:  Thank you, Your Honor.

6            THE COURT:  And I should say, it's your case,

7    it's your witness.  I don't intend to keep interrupting.

8    Just by way of general observation, okay.  You may

9    continue.

10            MS. CAHOON:  Thank you, Your Honor.  I appreciate

11    that direction.

12   BY MS. CAHOON:

13   Q.       Ms. Juan Pedro, after you learned about habeas

14   from other inmates, what did you do next?

15   A.       I continued to go to English school so that I

16   could learn more English so I could communicate with more

17   inmates.

18   Q.       And did you end up communicating with more

19   inmates in English as your skills improved?

20   A.       Yes.

21   Q.       What did you do next to pursue habeas?

22   A.       So I found out that a lot of people would do

23   paperwork for other inmates, but they would charge money so

24   I wouldn't say anything about my case then.

25   Q.       So at that point, what did you do next?

```
 1    A.        So I continued to go to school, and I could speak
 2    more English, and I tried to go to the library to look for
 3    books about the law, but everything was too much English.
 4    Q.        How were you able to put together the petition
 5    that you ultimately filed pro se?
 6    A.        So towards the end of 2018 a lady came to live
 7    with me, another inmate, and she told me that she was doing
 8    some paperwork for another inmate.  And I asked her how she
 9    would do that, and she said all you needed was some
10    paperwork from The Court.
11    Q.        And what did you do when you learned that?
12    A.        So at first she said that she charged.  And so
13    eventually I trusted her because I wouldn't just trust
14    anybody, so at the beginning of 2019 I gave her the form
15    for her to help me out, and she didn't charge.
16    Q.        Why wouldn't you trust just anyone to handle your
17    habeas petition for you?
18    A.        Because sometimes I would hear that sometimes
19    they would not fill out the paperwork correctly and they
20    would ruin the case.  And since I couldn't do it myself, I
21    had to have somebody else do it, so I couldn't just trust
22    anybody.
23    Q.        Why didn't you feel that you could do it
24    yourself?
25    A.        Because I couldn't write well in English or read
```

```
 1   the questions in order to fill out the form.
 2   Q.       Did you ever file any other kind of sentencing
 3   relief before that habeas petition?
 4   A.       So I know when I first got to the jail I didn't
 5   speak any English, and a woman told me they could file some
 6   paperwork for me.  And I know that somebody put in some
 7   papers for me, but I don't know what they were.
 8   Q.       So you did not actually -- well, so did you
 9   prepare any of that paperwork yourself?
10   A.       No, they did everything.
11            MS. CAHOON:  I think I have no further questions.
12   Thank you, Your Honor.
13            THE COURT:  I do have one question for the
14   interpreter.
15            INTERPRETOR:  Yes, Your Honor.
16            THE COURT:  When I asked -- strike that.  In what
17   language have you been translating from and to and to and
18   from?
19            INTERPRETOR:  Spanish to English and English to
20   Spanish, Your Honor.
21            THE COURT:  Okay.  Ms. Rice, you may proceed, or
22   you can take a couple minutes, if you want, to prepare your
23   cross-examination.
24            MS. RICE:  Thank you, Your Honor.  To make sure
25   we all have access to the documents, I'm going to be
```

1   referencing document number 85, the plea agreement, and

2   document number 114, the presentence investigation report,

3   document 131, the sentencing transcript, and document 134,

4   Ms. Pedro Juan's motion for modification of sentence.

5                       CROSS-EXAMINATION

6   BY MS. RICE:

7   Q.        Good afternoon, Ms. Pedro Juan.

8   A.        Good afternoon.

9   Q.        You were represented by Mr. Merl Dech in the

10  trial court in front of Judge Carr, correct?

11  A.        Yes.

12  Q.        And as part of that case, you entered into a plea

13  agreement with the government, correct?

14  A.        Yes.

15  Q.        And as part of that plea agreement, you admitted

16  to your role in the forced labor conspiracy, correct?

17  A.        Yes.

18  Q.        And you also admitted to lying to law

19  enforcement, correct?

20          MS. CAHOON:  Objection.

21          THE COURT:  Basis?

22          MS. CAHOON:  This is outside the scope of direct,

23  Your Honor.

24          THE COURT:  Seems correct to me, Ms. Rice.  How

25  is it within the scope?

1           MS. RICE:  Your Honor, it's going to the

2    credibility of the --

3           THE COURT:  Time out.  Let the --

4           MS. RICE:  Your Honor, it's going to the

5    credibility of the witness.

6           THE COURT:  Ms. Cahoon?

7           MS. CAHOON:  Well, considering that there was an

8    enhancement for obstruction, which Ms. Pedro Juan pled to

9    as a part of her agreement, I don't know that we need to

10   have that addressed as credibility.  It's already something

11   she's admitted.

12          THE COURT:  Yeah, I agree that she would be

13   judicially estopped from deviating from that.  Although --

14   although, she has raised the contention that she didn't

15   review the plea agreement, as I understand it, in Spanish

16   so perhaps it's not estopped.

17          MS. CAHOON:  And Your Honor, if I may, I believe

18   Ms. Pedro Juan's testimony was Mr. Dech explained the plea

19   agreement's contents with her, but she was not provided

20   with the Spanish language (unintelligible).

21          THE COURT:  There's a difference between

22   something being explained and something being read to the

23   defendant in Spanish.  And what does the record show with

24   regard to my asking or determining that the plea agreement

25   had been translated from English into Spanish?

1           MS. RICE:  Your Honor, I do not have the

2      transcript from the plea hearing.  I do have it from the

3      sentencing hearing.

4           THE COURT:  It's my custom and practice, I don't

5      think I deviated from it in this case, to confirm when

6      there's a nonnative speaker of English to ask the

7      interpreter in the presence of the defendant while under

8      oath whether she translated the plea agreement from English

9      into Spanish for the defendant.  If I overlooked that, then

10     -- then it would seem to me that it's appropriate to have

11     her answer the question that Ms. Rice posed so that the

12     record shows one way or another what her response was to

13     that charge and now to the question that reframes that

14     charge.

15          And I will ask the interpreter to ask the

16     defendant if she recalls the question that started this

17     long conversation off.  It can be asked again.

18          INTERPRETOR:  Ms. Rice, would you like to repeat

19     the question, or would you like --

20          MS. RICE:  I can ask it again.  I thought we were

21     waiting on our response from Ms. Pedro Juan.  Apologize.

22     For sake of (Interruption in Zoom audio).

23          THE COURT REPORTER:  Excuse me, I'm only hearing

24     part of what you're saying.  I'm getting some background

25     noise on your end.  You're very faint.

```
 1              THE COURT:  And I agree, you've been a bit
 2    muffled there.  Let's let the interpreter translate --
 3              MS. RICE:  Thank you, Your Honor.  And I
 4    apologize.  I hope this is better.
 5              THE COURT:  Why don't you just reask the
 6    question.
 7    BY MS. RICE:
 8    Q.        Ms. Pedro Juan, do you recall having an
 9    interpreter present at your change of plea hearing in front
10    of Judge Carr?
11    A.        Yes.
12    Q.        And at that hearing, did you indicate to The
13    Court you had reviewed the plea agreement with your
14    attorney?
15    A.        I don't remember.
16              MS. RICE:  Is this any better?
17    A.        Yes.
18    Q.        All right.  Ms. Pedro Juan, you would -- to
19    clarify, you don't recall whether you reviewed the plea
20    agreement at the change of plea hearing?
21    A.        No.
22              THE COURT:  Ms. Rice, may I interrupt?
23              MS. RICE:  Yes, Your Honor.
24              THE COURT:  I believe the question was you
25    admitted lying to the FBI, to law enforcement, or words to
```

1    that effect.  That was the question that triggered the

2    objection and then the long colloquy, and I overruled the

3    question and said you could ask that question.  Do you want

4    that question or not?

5          MS. RICE:  Thank you, Your Honor.

6    BY MS. RICE:

7    Q.      Ms. Pedro Juan, on Page 12 of your plea

8    agreement, you admitted to knowingly making numerous false

9    statements to the FBI, correct?

10   A.      Yes.

11   Q.      And you initialed all 15 pages of your plea

12   agreement, correct?

13   A.      Yes.

14   Q.      And you signed on the last page saying that you

15   have read or had the plea agreement read to you in its

16   entirety, correct?

17   A.      Yes.

18   Q.      And that plea agreement was reviewed with an

19   interpreter, correct?

20   A.      Yes, but I don't remember if they read all the

21   papers.

22   Q.      So you signed on the last page saying all pages

23   were reviewed by you even though that was not correct?

24         MS. CAHOON:  Objection.

25         THE COURT:  Basis?

1          MS. CAHOON:  With all due respect to Ms. Rice, I

2    believe she's characterizing what my client is saying.

3          THE COURT:  Why don't you reframe it. Rephrase

4    the question, please.

5          MS. RICE:  Thank you, Your Honor.

6    BY MS. RICE:

7    Q.        Did you read or have read to you the entire plea

8    agreement?

9    A.        I know that he said that there were 15 pages, I

10   don't remember if they read the whole thing.  I did not

11   read it myself because I can not read English.

12   Q.        But you had it read to you with an interpreter,

13   correct?

14   A.        I know that they read some things but not all.

15         THE COURT:  And who read it to her, and was it in

16   Spanish?

17   A.        The interpreter.

18         MS. RICE:  Thank you, Your Honor.

19   BY MS. RICE:

20   Q.        When you appeared for sentencing in front of

21   Judge Carr, there was an interpreter present for that

22   hearing, correct?

23   A.        Yes.

24   Q.        And at that hearing you, again, indicated that

25   you had met with your attorney and reviewed the Presentence

1   Report, correct?

2   A.        Yes.

3   Q.        In June of 2016, you filed a motion before this

4   court, do you recall that?

5   A.        Yes, and that's what I said in the beginning that

6   I didn't know what that was about.

7   Q.        For the record, I'm referring to document number

8   134.  Ms. Pedro Juan, you would agree that you signed that

9   document, correct?

10  A.        Yes.  When they said it was prepared I didn't

11  know what it was about, and I had just gotten to the prison

12  when I signed it.

13  Q.        You didn't review it at all before it was filed

14  with The Court?

15  A.        No.

16  Q.        How did the person who filed it get the specific

17  information about your case?

18  A.        So when you just get to the prison they give you

19  a paper and they give you a case manager, and I remember

20  that I showed them a paper.

21  Q.        Okay.  I just want to make sure I understand,

22  Ms. Pedro Juan.  So it's your testimony that you did not

23  review this document at all before it was filed?

24  A.        No.

25  Q.        No.  Are you aware that that document was filed

1    in English?

2    A.        No, I don't remember if it was in English.  I do

3    know that when they replied, all the paperwork was in

4    English.

5    Q.        And you were notified that that motion was

6    denied, correct?

7    A.        Yes.

8    Q.        In June of 2016, you were communicating with

9    people about potential legal remedies for your sentence,

10   correct?

11   A.        Yes, but they didn't explain it to me like that.

12   Q.        And in June of 2017, did you learn that your

13   motion had been denied?

14   A.        Yes.

15   Q.        Who did you learn that from?

16   A.        When you go to the library there are people who

17   have their names and numbers on the computers, and so I was

18   just learning English, and when I went there, there was a

19   girl sitting there who asked me if I had filed some kind of

20   motion because it appeared that it had been denied.

21   Q.        So in June 2017 you were speaking with people in

22   the legal -- the prison library about filing motions with

23   The Court?

24   A.        No, she didn't say anything about that.  She

25   didn't explain what a motion is or anything like that.  She

1   just asked me if I had sent some papers to The Judge.

2   Q.        My earlier question was who -- is this the same

3   person who gave you the order denying your first motion?

4   A.        No, it was a different one.

5   Q.        Okay.  So just to -- to finish up here, in

6   June -- or excuse me, September of 2016, you signed a

7   filing that was submitted to The Court, correct?

8   A.        I don't remember.

9             MS. RICE:  Well, I would ask to show document

10  134, so for purposes of the record, I will proffer in

11  document number 134.

12            THE COURT:  And what is it?  Excuse me.  What is

13  it again?  The plea agreement?

14            MS. RICE:  Your Honor, it is Ms. Pedro Juan's pro

15  se motion for modification of sentence.

16            THE COURT:  Okay.  Be admitted.  It's already

17  part of the record.  You've referred to a motion being

18  denied.  When and what was that?

19            MS. RICE:  Your Honor, that was your order on the

20  pro se motion for reduction of sentence.

21  BY MS. RICE:

22  Q.        Ms. Pedro Juan, in February of 2019 you filed

23  your first 2255 motion, correct?

24  A.        Yes.

25  Q.        And as part of that filing, which is document

1   176, you referenced the earlier motion for reduction of

2   sentence, correct?

3   A.          I don't remember.

4   Q.          Who wrote the motion that was filed in February

5   of 2019?

6   A.          An inmate that lived with me.

7   Q.          And finally, in March of -- I'm sorry, September

8   of 2016, there -- you lived with other inmates, correct?

9   A.          Yes.

10  Q.          And you had access to the law library at that

11  time as well, correct?

12  A.          Yes.

13              MS. RICE:  Your Honor, I have nothing further at

14  this time.  Thank you.

15              THE COURT:  Okay.  Ms. Cahoon, redirect?

16                       REDIRECT EXAMINATION

17  BY MS. CAHOON:

18  Q.          Ms. Pedro Juan, you told us earlier that you had

19  been looking for another inmate that you felt you could

20  trust to assist with filing your habeas petition.  Why did

21  it take so long to find an inmate you thought you could

22  trust to assist you?

23  A.          First of all, I couldn't speak English well, and

24  all the ones who could help either spoke English or would

25  charge money, and I had no money to be able to pay anyone.

1    Q.       Why didn't you simply find a lawyer to assist you

2    at that time?

3    A.       Because I didn't have any money to have an

4    attorney.

5             MS. CAHOON:  Thank you, Your Honor.  I don't have

6    any other questions for this witness.

7             THE COURT:  Okay.  Recross?

8             MS. RICE:  No, Your Honor.

9             THE COURT:  Further witnesses for the petitioner?

10            MS. CAHOON:  Thank you, Your Honor.  We do not

11   have any additional witnesses.  Petitioner would rest

12   pending argument at the close of this hearing.

13            THE COURT:  Ms. Rice, you have witnesses?

14            MS. RICE:  No witnesses for the government, Your

15   Honor.  I'd proffer in the record from the case.

16            THE COURT:  Okay.  And what do you propose by way

17   of supplemental briefing, if anything, or do you wish to

18   rest on the briefs previously submitted?  Ms. Cahoon?

19            MS. CAHOON:  Your Honor, I believe the --

20            THE COURT:  Let me back up -- or do you want to

21   take a few minutes to think about that and perhaps consult

22   with Mr. Ahn?

23            MS. CAHOON:  Thank you, Your Honor.  As in all

24   things, Mr. Ahn is smarter than me, so if The Court will

25   indulge me for 30 seconds so I can consult with him?

 1              THE COURT:  Why don't we put you in a breakout

 2      room.  Do you have Melissa's phone number, or can you text

 3      her?

 4              MS. CAHOON:  I can shoot her an email, but I

 5      think actually we should be able to leave the breakout room

 6      ourselves.

 7              THE COURT:  Go ahead.  Take whatever time you

 8      want.

 9                  (A brief recess was taken.)

10              MS. CAHOON:  Thank you, Your Honor.  We're ready

11      to go back on the record.

12              THE COURT:  Okay.

13              MS. CAHOON:  Thank you, Your Honor.  I believe

14      The Court was asking if there was a need for post-hearing

15      briefing, and Mr. Ahn and I have consulted, and we think

16      that we'll just have a brief closing argument today, and we

17      don't believe there will be a need for briefing.

18              THE COURT:  Ms. Rice, do you want to submit a

19      supplemental brief, or would you be prepared to argue this

20      afternoon?

21              MS. DYBALA:  Chelsea, you are muted.

22              MS. RICE:  Sorry.  Your Honor, given the lack of

23      clarity regarding whether the full plea agreement was

24      reviewed with Ms. Pedro Juan, I would ask for time to order

25      the change of plea transcript and submit supplemental

1    briefing as to that.

2              THE COURT:  Okay.  If you could perhaps put the

3    interpreter and the defendant petitioner into a breakout

4    room, please.

5              MS. DYBALA:  How about a waiting room?

6              THE COURT:  A waiting room is fine.  Doesn't

7    matter.

8                   (Defendant and interpreter in waiting room.)

9              MS. DYBALA:  Okay, Judge, they are both in a

10   waiting room.

11             THE COURT:  Okay.  Yeah, candidly I'm a little

12   surprised that neither of you have called the interpreter

13   who handled the proceeding.  I think it would be important

14   to know from the interpreter whether or not, if she recalls

15   the proceeding, she had any problems or difficulty

16   communicating with the defendant.  But that's -- and

17   likewise, Mr. Dech, whether he, in fact, was with an

18   interpreter and if the interpreter read the plea agreement

19   verbatim.

20             I mean, again, I think it's my standard practice,

21   I'd be very surprised if I deviated from it in this case,

22   to confirm at the time of plea taking in a foreign language

23   that the interpreter read the entire agreement, to have

24   that confirmed by the defendant.  I may have forgotten that

25   part here, but I certainly would be very surprised at

1    myself if I did not ask that question of the interpreter

2    and have the interpreter say yes.  I think here also the

3    contention is that she had difficulty (unintelligible)

4    Spanish -- comprehending Spanish, it would be fair to find

5    out before the government has rested, and, likewise, with

6    Mr. Dech.  So here we are, I'm just saying such is life.  I

7    gather the government, in effect, is going to rest upon its

8    contentions, in essence, that the petition was untimely,

9    and also simply on the transcript of the plea agreement --

10   of the plea taking hearing to determine whether or not I,

11   in fact, asked those questions; is that correct?

12           MS. RICE:  Your Honor, if The Court decides not

13   to allow supplemental briefing and time to order the change

14   of plea transcript, that is correct, that it is untimely.

15           THE COURT:  I will certainly let you, you know,

16   supplement the record with a copy of that portion of the

17   transcript.  That's no problem at all.

18           MS. RICE:  Thank you, Your Honor.

19           THE COURT:  It's, although not transcribed, what

20   happened is what happened, and it should be part of these

21   proceedings, certainly that portion of it.  So I don't know

22   whether Angela or Tracy took that session.  Angela, you

23   probably don't have any recollection; is that correct?

24           THE COURT REPORTER:  I do not, Judge.  It should

25   say on the docket.

1          THE COURT:  Tina, can you take a --

2          MS. CAHOON:  If it's The Court's intention to

3   provide additional time so the record can be supplemented,

4   then I think we would like to have supplemental briefing

5   because you're asking that question --

6          THE COURT:  Absolutely, by all means.  I wouldn't

7   give her the ability to write a brief and then say, sorry,

8   pal, you're out of luck.  Not at all.

9          MS. CAHOON:  Never hurts to ask, right?

10         THE COURT:  Of course not.

11         COURTROOM DEPUTY:  Your Honor, the court reporter

12  was Angela Nixon.

13         THE COURT:  Okay, good.  I know we've been having

14  some problems retrieving transcripts from Tracy, through no

15  fault of her own.  So that's fine.  Angela, it's probably

16  that portion of the plea hearing -- you've been there with

17  me often enough, probably ten minutes, if that, and so once

18  you locate your recording or transcript, whatever it is,

19  put into that little box, couple weeks to get that out,

20  what's your -- what's your thought?

21              (A brief discussion was had off the record.)

22         THE COURT:  The order will be entered accordingly

23  that the court reporter shall obtain and prepare that

24  portion of the plea taking hearing.  Angela, is that good

25  enough for you if there will simply be an order --

```
 1              THE COURT REPORTER:  Judge, I will need to have
 2    an order on the docket.
 3              MS. RICE:   I'll be sure to have that full
 4    transcript request and order in by tomorrow.
 5              THE COURT:  That's fine.  No problem.  So let's
 6    say a couple weeks for Angela to get that out, and then
 7    what about, what if I -- you file a supplemental brief by
 8    the end of the month, end of October?
 9              MS. CAHOON:  Matt, do you think that works for
10    your schedule as well?
11              THE COURT:  I was thinking maybe she file hers,
12    you file yours.  If you want, whatever you want.  I mean,
13    it is what it is.  You'll have the transcript, you'll both
14    be arguing the same thing.  Quite candidly, I'm not sure it
15    would be conclusive with the record because I suspect it's
16    going to say what I said.  Still doesn't get me -- what
17    seems to me to be the core issue here is whether at the
18    time her Spanish was sufficiently fluent to -- to
19    understand Ms. Donohue or whoever else the interpreter was.
20    I will also say, though, that if -- if the inter -- if the
21    transcript shows that the interpreter, whoever it was, read
22    the entire transcript in Spanish, that raises the real
23    question about her credibility because I think she said
24    pretty directly it was never read to her.  And Mr. Dech
25    showed her a few papers, and it was never read to her, and
```

 1     I would infer that means in Spanish or otherwise.  We will

 2     simply wait and see.  Go ahead.

 3            MS. CAHOON:  I know that we'll make these

 4     arguments in post-hearing briefing, but I would be remiss

 5     to point out the mention of habeas in any standard plea

 6     agreement is very brief, no explanation of what it is, how

 7     it works, it's just you understand you're waiving a lot of

 8     your habeas arguments by pleading guilty.  We rely on the

 9     defense lawyer to explain what all that means, but it's not

10     actually in the language of the plea agreement.

11            THE COURT:  I understand.  On the other hand, it

12     goes pretty directly to her credibility in terms of just

13     generally.  I mean, if she said it was never read to me and

14     the interpreter said that she did, then I think it's, you

15     know, a question of whether I believe her statement that it

16     was never read to her in any language whatsoever, which, in

17     turn, goes to, I think, her credibility about her failure

18     to file a petition and so forth and so on.  As I say,

19     nobody's presented any evidence to the core issue, well,

20     just how much Spanish does she really understand.  And also

21     what did Mr. Dech do, if anything, during the course of the

22     discussion, and did he afterwards discuss with her her

23     post -- post sentencing remedies, I don't know.  But the

24     record is the record.  I take it as I find it.  I'm just

25     explaining I'm somewhat concerned that I will be dealing

```
 1    with a very important question with incomplete evidence to
 2    reach a satisfactory -- a result that would satisfy me had
 3    I had a more complete record.  But various burden -- I
 4    think it was the government's burden to come forward.
 5    That's the way it always happens.  If you don't call the
 6    lawyer, the government calls the lawyer.  In this case, not
 7    up to you to call the interpreter.  Obviously you could
 8    have if you wanted to, but that's your choice.  Here we
 9    are.
10              So in any event, let's do this, just to try to
11    get the case decisional by mid November.  Ms. Rice, why
12    don't I give you until the 20th of October to submit your
13    supplemental brief.  Obviously if the delay in getting the
14    transcript or other things get in your way, that's fine.
15    Then Claire, I'll give you, let's say to the 15th of
16    November.  Obviously next day if that's -- next business
17    day --
18              MS. CAHOON:  Certainly, Your Honor.
19              THE COURT:  I'll give -- Ms. Rice, I'll give you
20    until the 15th to reply, okay.  And the case will be
21    submitted, and I will go from there.  I will try --
22              MS. CAHOON:  Your Honor, if The Court still would
23    entertain -- I think Mr. Ahn has prepared some closing
24    remarks, last we'll all be together live regarding our
25    petition.
```

```
 1              THE COURT:  I'm not sure we have time.  I think
 2    she's got to be -- it's my understanding she's under
 3    lockdown, and it's almost 4:00.
 4              COURTROOM DEPUTY:  The time was extended to 5:00.
 5              THE COURT:  It's only 3:30 -- 3:40.  Okay.  Let's
 6    go back, bring the interpreter and the petitioner back in,
 7    and then, Ms. Rice, you can respond in obviously as you see
 8    fit.
 9              MS. RICE:  Thank you, Your Honor.
10              MS. DYBALA:  Okay, Judge, they are both
11    available.
12              THE COURT:  Okay.  And we will now hear closing
13    remarks.  And I caution the lawyers, remember maybe at each
14    few sentences to pause for the interpreter's convenience.
15    And to the interpreter, obviously if they exceed your
16    ability to recall and translate that for you, say so, and
17    they will repeat it.
18              MS. CAHOON:  Thank you, Your Honor.
19              MR. AHN:  Thank you, Your Honor.
20              COURTROOM DEPUTY:  Sorry, Matthew.  Judge, can
21    you get video consent also, please?  I apologize.
22              THE COURT:  Oh my goodness, yes.  Thank you.
23    Ms. Pedro Juan, you have a right -- I should have asked
24    this question at the outset and I forgot.  I apologize.  I
25    think the word in Spanish is disculpas, I think that's the
```

1    correct term.  You have the right to have this hearing --

2    to hold this hearing in a courtroom like the one you were

3    in the last time we were together.  And you can consent --

4    however, you can agree to having the hearing conducted the

5    way we've done today, that is by long distance, video

6    conference.  Do you understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And have you discussed whether to

9    hold the hearing today in this way or to wait until it can

10   be held in a courtroom with your attorneys?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And was it your decision, after

13   talking to them, to proceed with this hearing the way we

14   have so far today?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Was that decision motivated, in part,

17   by the consideration that no one could be certain when we

18   could have held the hearing in a courtroom?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.  That would involve both when

21   our courthouse would reopen, which now is scheduled for

22   October 1st, whether or not it would stay open, we don't

23   know.  And finally, the problems of transporting you,

24   problems with the Bureau of Prisons transporting you to the

25   courthouse.  Do you understand that?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Is that's correct?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Okay.  And so you're perfectly

 5    satisfied with the fact that I've gone ahead and held the

 6    hearing, though I failed to get your prior agreement and

 7    consent before we started?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Ms. -- Ms. Cahoon and Mr. Ahn, do you

10    have any concern about the fact that I overlooked obtaining

11    consent before we began the hearing rather than getting it

12    toward the end?

13              MS. CAHOON:  No, Your Honor.  Our client has

14    indicated we reviewed those options with her, and we

15    believe she was fully aware of them.

16              THE COURT:  Ms. Rice, any -- I apologize.  And

17    likewise, does the government have any concern or objection

18    with regard to the fact that I neglected to obtain the

19    defendant's consent to proceeding by way of Zoom at the

20    outset of the hearing?

21              MS. RICE:  No, Your Honor.

22              THE COURT:  Okay.  Thank you, Tina.  Okay.

23              Mr. Ahn, now you may proceed.

24              MR. AHN:  Thank you, Your Honor.

25              THE COURT:  Good afternoon.
```

1          MR. AHN:  The questions before this Court are

2    sequential and straight forward.  There are three of them.

3          First, was Ms. Pedro Juan reasonably diligent in

4    pursuing this motion such that the timing of her filing

5    should be deemed acceptable.

6          The second and third questions regard the two

7    Strickland factors.  And since we have briefed those issues

8    fully, we anticipate additional briefing, I will keep my

9    comments focused on equitable tolling.

10         The standard for equitable tolling, as clarified

11   in our reply, was created by Holland V Florida in 2010 and

12   requires two things.  First, that Ms. Pedro Juan was

13   exercising reasonable diligence in pursuing her rights; and

14   second, that some extraordinary circumstance stood in her

15   way and prevented that timely filing.  Ms. Pedro Juan is

16   not required to have exercised maximum feasible diligence,

17   just reasonable diligence.  In Ms. Pedro Juan's testimony

18   today, she stated that she had no English skills during the

19   pendency of her case and had relatively limited Spanish

20   skills during the pendency of her case.

21         THE COURT:  Let me say -- excuse me, I credit the

22   first portion of that testimony relative to her English

23   speaking skills.  She came into this country -- go ahead.

24   I may not remember accurately, but I believe she came into

25   this country at about age 18, and I believe that at the

1    time of her arrest she was about 21.  I may be off a little

2    bit.  And while she was here, I'm willing to assume, absent

3    something in the record to the contrary, that whether

4    Mr. Serrano was with her, or whether it was during the

5    period he was not with her, that she was communicating

6    primarily with the victims of this human trafficking

7    endeavor in hers and perhaps their own native tongue,

8    either Spanish or the dialect thereof.  And as I say,

9    absent some record to the contrary, I would -- evidence in

10   the record to the contrary, conclude from those facts that

11   her English ability is probably quite limited, as she's

12   testified to when she came, and that they remained

13   essentially equally so limited, or substantially so, prior

14   to her arrest and at the time of trial and sentencing.  And

15   the that issue of her ability to comprehend and communicate

16   in Spanish remain, I think, at issue in this case.  And I

17   presently have no desires, I've expressed my view on that,

18   credibility of her testimony in that regard.  I do have

19   some doubts, but I'll let the two of you object -- excuse

20   me, the two of you argue in response in the supplemental

21   briefing with regard to the doubts that I do have about her

22   testimony in that regard.  And so I read -- until I see

23   what happened once we have a transcript from Angela, until

24   I read what you fight about, I'll leave that question open.

25            Finally, it does occur to me since we are

1    expanding the record based on the transcript of the

2    proceedings before me, unless there's an objection, which I

3    will hear you argue right now, I think it would be

4    appropriate to obtain a copy of the transcript -- we're

5    going to get the transcript, but for me to limit my review

6    of it to, both the plea taking hearing and the sentencing

7    because, again, it is my custom and practice, and, again, I

8    may not have followed it in this case and at that time, but

9    it's my custom and practice that a non-English speaking

10   defendant to ask at the outset whether that defendant has

11   read the Presentence Report and comprehended it, and with a

12   nonspeaking defendant to ask whether it was translated from

13   whatever language I understand that the defendant speaks,

14   into that language, and then were there any questions she

15   may have had, et cetera, is translated back into English.

16            And to back up to the beginning, as it were, on

17   the same general issue, it is my practice, and I would be

18   surprised if I didn't follow it here, to take the time and

19   do so quite slowly, and I believe clearly, say to the

20   defendant that if at any time you do not understand

21   something, say so, and you will have ample opportunity, the

22   opportunity to get it clarified.  I may have varied the

23   phraseology, but, again, I would be astonished and

24   disappointed in myself if I did not, at the outset of the

25   plea hearing, say if you don't understand something, say

1   so.  And though it may be of less significance relative to

2   this hearing and allegations, it's also my unbearing

3   practice to say if at any time you want to talk to your

4   attorney, say so.  And I have no recollection, though the

5   transcript will show, of Ms. Pedro Juan ever indicating any

6   of the -- during any time of the proceedings that she did

7   not understand what was going on.  And that nor, according

8   to my recollection because this event's several years ago,

9   did she ask to speak to her attorney.

10          And I'll be very candid with you, if I said that,

11  it would be a little hard to credit the suggestion that a

12  person who's partially, 60 percent or so, fluent in Spanish

13  would not understand if you do not understand something,

14  say so.  That is not a complicated legal statement.

15          On the other hand, quite candidly, the issue of

16  credibility as to the allegations of what happened to this

17  woman after she got into this country also bear upon this

18  case because were I to credit the allegations that she made

19  about the attorney in Columbus, which, unfortunately, no

20  record exists one way or another, through no fault of

21  anybody, regard -- and regardless of any concerns I may

22  have about her ability to comprehend and communicate in

23  Spanish, at the very least, that aspect of her claim for

24  relief, likewise, raises substantial issues to credibility.

25  Because if I -- because if I credit that testimony, it's

1   clear that there was no evidence presented in that regard

2   in mitigation, and I have no evidence one way or the other

3   that, through an interpreter or otherwise, she called those

4   allegations to Mr. Dech's attention.  And once again, I'm

5   confronted with the problem of the very important issue

6   needing for me to address it, based solely upon the record

7   of the plea taking hearing and perhaps the sentencing

8   hearing, and -- and also -- excuse me -- and also as

9   supplemented by the evidence that she has subsequently

10  submitted -- excuse me -- the evidence that she has

11  subsequently submitted --

12              MS. CAHOON:  Your Honor, if I may, I think the --

13              THE COURT:  If I may, I still have to complete --

14              MS. CAHOON:  My apologies.

15              THE COURT:  It does seem to me that I'm calling

16  those concerns to your attention because I want you to take

17  them into consideration in the supplemental brief.  And I

18  think, Ms. Cahoon and Ms. Rice, you're familiar with my

19  practice, I try to -- from sentencing I try to let people

20  know what's on my mind.  Usually, of course, it's at the

21  outset of sentencing, or along the way, what I'm thinking

22  about in terms of sentence.  And that's what I'm trying to

23  do now at the conclusion of this hearing while these

24  thoughts occur to me are fresh on my mind, and that you

25  both can address them in your supplemental briefing.  And

1   again, as I think you've heard me say, I don't know whether

2   Ms. Rice has, I believe you've heard me say, I'd rather

3   give you the opportunity to shoot at a sitting target

4   than -- than in the general direction of somebody who's

5   hiding, as it were, behind the black robe.

6          That being said, Ms. Cahoon, does that speak to

7   whatever it was you were about to say?  And if not, that's

8   fine.

9          MS. CAHOON:  Partially, Your Honor.  I do want to

10  make a clarification for the record before we wrap this up.

11         THE COURT:  Sure.

12         MS. CAHOON:  I believe The Court stated it was

13  considering limiting its review to the plea transcript and

14  the sentencing transcript moving forward to resolution --

15         THE COURT:  Well, whatever other evidence is in

16  the record -- of record now.  I mean, again, I can't recall

17  whether I have an affidavit from Mr. Dech or --

18         MS. CAHOON:  You do, Your Honor.

19         THE COURT:  I would assume so.

20         MS. CAHOON:  I simply want to say, for the sake

21  of the record, that it's our position, I'm sure it will be

22  (unintelligible) as well that the plea

23  agreement (unintelligible) --

24         THE COURT REPORTER:  Claire -- Claire, I'm not

25  hearing you very well.  You're fading in and out.

1          MS. CAHOON:  I'm sorry, Angela --

2          THE COURT:  Just for future reference, I've had

3     the same problem.  Angela's had the same problem with me,

4     that's why I wear the ear buds.  So you might give some

5     thought to that.  Let's let the translator translate that.

6          MS. CAHOON:  I simply want to provide for the

7     record, the only reason we've been talking about the plea

8     agreement at all is because it goes to whether or not

9     Ms. Pedro Juan understood her habeas right.

10         THE COURT:  You're fading, whether or not

11    Ms. Pedro Juan understood --

12         MS. CAHOON:  Understood her habeas rights at the

13    time that she was sentenced.  This is not a case in which

14    we are in some way challenging her plea.  And so while the

15    change of plea hearing will give us some insight, it will

16    not address what explanation Mr. Dech says, if any, about

17    the nature of that plea.

18         THE COURT:  I understand that.  There's no record

19    of that except what may be in the transcript, and I doubt

20    whether there's any -- and I understand that, but it seems

21    to me -- excuse me.  I'm sorry, Ms. Cahoon.  Go ahead.  I

22    promise this is the last thing I will say.  The only -- and

23    I interrupted.  I have something on my mind.  But that also

24    leaves open her credibility as to the abuse -- the sexual

25    abuse and other abuse that she received from the Columbus

1   attorney, and also the indifference exhibited, manifested

2   by the Columbus Police Department, which, by the way,

3   appears to be correct because there's no record of it.  But

4   on the other hand, also goes to the credibility of whether

5   or not she, in fact, made such a complaint.  And that --

6   and because, as I understand your petition, the timing

7   issue is one thing, then we get to the issue of mitigation.

8   And -- and, you know, and the record is as it is with

9   regard to that, but I do think threshold issue with regard

10  to that is her credibility, whether those events occurred,

11  and then obviously if they occurred and I credit that, then

12  I credit, I assume that she tried to go to the police and

13  they did nothing, and, for whatever reason, Mr. Dech didn't

14  find out about it.  And all I had was the -- go ahead.

15          MS. CAHOON:  Well, I do want to clarify based on

16  The Court's comments that Mr. Dech acknowledges --

17          THE COURT REPORTER:  Claire, I only got 2/3 of

18  that.  I can't hear you.

19          MS. CAHOON:  I'm sorry, Angela.  There's not much

20  I can do.

21          THE COURT:  Mr. Dech does acknowledge, you are

22  correct now that you recall to my mind his affidavit and

23  that he does acknowledge that -- go ahead.  Complete your

24  sentence.

25          MS. CAHOON:  I was simply saying, to clarify,

1   Mr. Dech does acknowledge that Ms. Pedro shared her

2   horrible experiences of sexual assault, which is part of

3   our argument of ineffective assistance of counsel, to bring

4   it to The Court's attention.

5           THE COURT:  Candidly -- go ahead.  Let her

6   translate that.

7           MS. CAHOON:  To circle back with a final remark

8   as to credibility.

9           THE COURT:  Okay.  And if I can say that's --

10  that's an important point that you make in response to what

11  I was just saying.

12          MS. CAHOON:  Thank you, Your Honor.  Ms. Pedro

13  Juan's testimony today was that parts of the plea agreement

14  were read to her during her meetings with Mr. Dech.  She

15  did not say -- she did not testify that that agreement was

16  not read to her at all.  And so if the record reflects that

17  at the change of plea hearing she indicated that it was

18  read to her, it would be defense position and our argument

19  that it would not --

20          THE COURT:  You're fading out a bit.  If the

21  record reflects --

22          MS. CAHOON:  If the record reflects that at the

23  change of plea hearing that she did indicate to The Court

24  that, yes, that agreement was read to her, it's our

25  argument that that would not reflect poorly on her

1    credibility.

2            THE COURT:  But again -- all I'm saying is hold

3    your fire on that.  You know, let's proceed with your

4    remarks that were prepared by Mr. Ahn.  And I, by no

5    means -- let me back up.  It's the purpose of my making

6    those remarks is to make clear that you have the

7    opportunity in the final briefing to address them.  Okay.

8    Does that answer your concern?

9            MS. CAHOON:  It does.  Thank you, Your Honor.

10           THE COURT:  I would never cut -- cut you off and

11   say that's it -- I was trying to make clear that I have

12   questions about credibility, and I think they need to be

13   addressed as part of the supplemental briefing.  And in

14   fact, I want them to be addressed, okay.

15           Okay, Mr. Ahn?

16           MR. AHN:  Your Honor, I think in the process of

17   discussing your remarks, I think that Ms. Cahoon has

18   largely covered what I wish to say, and thus we will wait

19   for supplemental briefing.

20           THE COURT:  Okay.  And again, you're welcome to

21   repeat that.  I would prefer that both parties basically

22   give me a complete brief rather than my having to flip to

23   one, flip back to try to see where they blend and so forth.

24   Okay.

25           Okay.  Ms. Rice, anything further on your behalf?

1          MS. RICE:  Thank you, Your Honor.  I'll save the

2    majority for the supplemental briefing, but I do want to

3    clarify the record with respect to Mr. Dech's statements at

4    sentencing.  And that is that Mr. Dech did advise The Court

5    of Ms. Pedro Juan's victim status, and that information was

6    set forth in the presentence investigation report.

7          THE COURT:  And that -- I recall that now, and

8    that simply, seems to me, the question, well, under all the

9    circumstances, was that sufficient to present an

10   adequate -- Constitutionally adequate presentation,

11   mitigation, I think that's what the defendant's contention

12   was, that it was not.

13         MS. RICE:  Correct, Your Honor.

14         THE COURT:  Okay.  Go ahead, Ms. Rice.

15         MS. RICE:  And Your Honor I will save it for the

16   supplemental briefing why Mr. Dech's performance was not

17   inefficient and why the second prong of Strickland is not

18   satisfied.

19         THE COURT:  And I think, Ms. Rice, you had one

20   extra use of the word not.  I think you said will save for

21   supplemental briefing why Mr. Dech's performance was not

22   sufficient, if that's what you said, or that's what I heard

23   in any event, that's not what you meant?

24         UNIDENTIFIED SPEAKER:  Excuse me one minute.

25   We've got to take her out here for count.

```
 1              THE COURT:  I'm all set.  Give me maybe about 30
 2    seconds.  Go ahead.
 3              MS. DYBALA:  Judge, they did take her to count
 4    her.
 5              THE COURT:  Oh, to count her.
 6              MS. DYBALA:  She'll be back momentarily.
 7              THE COURT:  And I really do think it will take 30
 8    seconds to say nothing further, that concludes this
 9    proceeding.
10              MS. DYBALA:  Okay, Judge.  She is back.
11              THE COURT:  Okay --
12              MS. RICE:  Your Honor.
13              THE COURT:  Ms. Pedro Juan, you back with us?
14              THE DEFENDANT:  Yes.
15              THE COURT:  Okay.  Ms. Rice?
16              MS. RICE:  Thank you, Your Honor.  For the
17    record, I meant to say was not deficient with respect to
18    Mr. Dech.  Thank you.
19              THE COURT:  I understood what you meant
20    obviously, but I just didn't want any ambiguity in the
21    record so the context of this whole proceeding would be
22    clear even if you misspoke and/or I misheard.
23              MS. RICE:  And finally, Your Honor, just on a
24    housekeeping note, I forgot, I have to get our budget
25    approved before I can submit the transcript request, so it
```

1    may be a couple of days.

2              THE COURT:  No problem.  And if -- if delaying

3    getting it approved or Angela being able to get it to you

4    causes a problems for you, then whenever you do file your

5    supplemental brief, the time for the reply will be extended

6    accordingly.  And, likewise, for you, Ms. Cahoon, Mr. Ahn,

7    okay.

8              Let me speak with Ms. Pedro Juan for a moment,

9    please.  Ms. Pedro Juan, can you say something, please, so

10   I can see her.  I want to be speaking to her directly

11   rather than at you.  Just a couple of words.

12             THE DEFENDANT:  Okay.  I'm understanding

13   everything okay.

14             THE COURT:  Okay.  I just want to say to you, I

15   know how important this is to you, and I will do my best to

16   get a decision out promptly.  And again --

17             THE DEFENDANT:  Thank you.

18             THE COURT:  -- and just so you understand, in

19   this proceeding that if I rule against you, you have a

20   right to appeal.  Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  And that you will continue to

23   have Ms. Cahoon and Mr. Ahn as your attorneys if you want

24   to have them.  If not, other counsel can be appointed for

25   you.  But in any event, you can prosecute that appeal, you

1    can maintain that appeal without cost to yourself.  And

2    likewise -- and likewise, whatever the cost for the

3    transcript or whatever the cost of putting the record

4    together for you may be, it will be -- the record that the

5    Court of Appeals will consider, the transcript of these

6    proceedings, that cost will be borne by the United States

7    Government without cost to yourself.  Do you understand

8    that?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Anything further for the petitioner,

11   Ms. Cahoon, Mr. Ahn, anything further for you?

12        MS. CAHOON:  Nothing additional, Your Honor.

13   Thank you.

14        THE COURT:  Okay.  Ms. Rice, anything further for

15   the government?

16        MS. RICE:  No, Your Honor.  Thank you.

17        THE COURT:  I just want to -- and I promised the

18   interpreter that after I complete what I say to you now, I

19   won't be interrupting you during this proceeding any

20   further.  Okay.  I just want to thank you for your

21   services.  Greatly appreciate it.  Go ahead.

22        INTERPRETOR:  Your Honor, it's the interpreter's

23   pleasure to interpret for The Court.

24        THE COURT:  Why don't you interpret that because

25   I do have one final thing to say to you.  I've been in

1    sessions where simultaneous translation has occurred, and

2    it's my recollection that the translators would switch

3    every 20 minutes or so simply because of the exhaustion

4    that would set in with the difficulty of, you know -- that

5    was simultaneous translation, which this has not been, but

6    I understand the difficulty of translation in any event.

7    So thank you very much.  Gracias.  Mucho gracias.  Thank

8    you very much.  That will conclude this proceeding.  Thank

9    you.  Do you want to talk to your client at all for a few

10   minutes?  You're welcome to do so.

11              MS. CAHOON:  Is it easy to send us to the

12   breakout room?

13              THE COURT:  You'll want the interpreter.  And

14   Ms. Unis, go to breakout room -- or Ms. Rice, excuse me,

15   can both sign off, and then you'll be -- and Tina can --

16              MS. DYBALA:  I'll put them in a breakout room.

17              MS. CAHOON:  Thank you, Your Honor.

18              THE COURT:  Take whatever time you want.  I'm

19   going to log off.  Thank you, folks.

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    s:/Angela D. Nixon              October 9, 2020

7    --------------------------                  -----------

8    Angela D. Nixon, RMR, CRR       Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```